Paul J. KERN, Plaintiff-Appellant,

v.

A. J. HETTINGER, Jr., individually, and as a Director of The Western Pacific Railroad Company, The Western Pacific Railroad Company, Frederic B. Whitman, Roy Larson, Wakefield Baker, Benjamin C. Carter, J. Reuben Clark, Jr., Lindsey W. Cochran, Peter Cook, Jr., James A. Folger, W. P. Fuller, 3rd, Benjamin Graham, John D. Kerr, Albert D. Layton, Donald MacLean, Harry C. Munson, Theodore Weisman, Richard Rowe, fictitious, the real name of the defendant or defendants being unknown to the plaintiff, said fictitious name being intended to designate any one or more persons who were Directors of the defendant, The Western Pacific Railroad Company, between the months of June and October 1957, Samuel P. Mason, The Chase Manhattan Bank and the Chemical Corn Exchange Bank, Defendants-Respondents.

No. 270, Docket 27286.

United States Court of Appeals
Second Circuit.

Argued March 27, 1962.

Decided May 4, 1962.

**334**

Eleanor Jackson Piel, New York City (Donner, Perlin & Piel, New York City, on the brief), for plaintiff-appellant.

Herbert C. Earnshaw, New York City (Donald A. Krenz and Royall, Koegel & Rogers, New York City, on the brief), for defendants-respondents A. J. Hettinger, Jr., and The Western Pac. Ry. Co.

A. Donald McKinnon, New York City (George H. Bailey and Milbank, Tweed, Hope & Hadley, New York City, on the brief), for defendants-respondents The Chase Manhattan Bank and Samuel P. Mason.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge.

In this action by Paul J. Kern against various corporate and individual defendants to recover damages for alleged libel and slander summary judgment has been granted by the District Court dismissing the amended complaint against defendants Chase Manhattan Bank, Samuel P. Mason, Western Pacific Railroad Company, and A. J. Hettinger, Jr. A similar motion by defendant Chemical Corn Exchange Bank was denied and the ruling thus made is not before us for review. Plaintiff's appeal is authorized by an order of Judge Murphy, pursuant to the provisions of Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C. The opinion below is not reported. Jurisdiction of the District Court for the Southern District of New York is based upon diversity of citizenship.

We shall separately consider the rulings in favor of Chase Manhattan Bank and Mason, on the one hand, and in favor of Western Pacific and Hettinger, on the other, as wholly distinct principles of law are involved in each. It was held that before the commencement of the action against the Chase Manhattan Bank and Mason the one-year Statute of Limitations of either New York or California [1] had run. The dismissal against Western

---

**1.** New York Civil Practice Act, § 51, par. 3; California Code of Civil Procedure, §§ 312, 340, par. 3.

Pacific and Hettinger was based upon *res adjudicata* with respect to Western Pacific and collateral estoppel with respect to Hettinger, by reason of the prior dismissal of an action against them by Kern based upon the same alleged wrong, in the United States District Court for the Northern District of California, in which action Hettinger had neither been served with process nor had he made any general appearance by counsel. While we affirm the judgment in favor of Western Pacific, we find it necessary otherwise to reverse both judgments appealed from for reasons stated below.

As is so often the case, the basic issues are quite simple and they have been obscured by numerous motions and cross-motions, charges and countercharges of one kind and another. It will suffice to say that voluminous affidavits were considered in support of the motions for summary judgment and in opposition thereto, and that, despite prior rulings by other judges, the motions were properly before the Court below.

█ A few preliminary observations will clear away some of the brushwood. The action is based upon an alleged defamatory report on Kern sent by the Chemical Corn Exchange Bank to the Chase Manhattan Bank and forwarded, pursuant to a request for information, to Western Pacific. It is alleged that the following excerpt from the written report thus forwarded, part of Exhibit A annexed to the amended complaint, falsely charged Kern with activities of a communistic flavor, particularly the statement that "he was active in the Communist organization":

> "BRANCH OF NEIGHBORING BANK REPRESENTATIVE:
>
> "I have known Mr. Kern for about a year and a half. He has been in to see us several times and our relations have been very cordial. He maintains some very nice accounts with us as Mr. Kennedy may have mentioned. I believe Mr. Kern to be a very friendly man and he always makes a good appearance. He is a tall man, I would say about 6′3″, dresses very well. He is a family man and I consider him to be very stable.
>
> "Personally I believe that he would be useful in an executive capacity. He is a good lawyer and from what I can see a competent business man. Our record show that he was a member of Communist front organizations, but I am inclined to think that he was more of a misguided liberal. He has since changed his view on the Communist party. One of his clients is a large record company, which is a depositor of ours. Their head office is Chicago and when we have difficulties, I have called on Mr. Kern to straighten them out. He has been very helpful to us in this matter. Although I feel he would be and [sic] asset to a company, that company should consider his past record. Otherwise, I do not believe there is any danger of his political views being what they were, but the very fact that he was active in the Communist organization would be bad for publicity." (Italics omitted.)

There is no substance to the alleged "libel of credit" [2] and this was properly dismissed. As we conclude that the Statute of Limitations had not necessarily run prior to the commencement of the action, the allegations relative to con-

---

2. It is alleged that the paragraph of Exhibit A quoted below constitutes a "libel of credit," because in the past "Chemical Corn Exchange Bank or its predecessors had loaned plaintiff the sum of \* \* \* $500,000, which sum was repaid." This borrowing is said to have given the bank "a complete picture of plaintiff's personal worth." This portion of Exhibit A reads:
"BRANCH NEIGHBORING BANK, CREDIT DEPARTMENT:
"We have had an account from Paul J. Kern since 1946 in which very satisfactory balances have been maintained. This has been a routine, non-borrowing account. We understand he represents a

cealment and conspiracy have no relevancy to the issues now before us and they may be disregarded. Moreover, it was sufficiently developed on the oral argument before us that the so-called "second report," sent by Chase Manhattan around September 27, 1957, contained nothing that could be considered defamatory. Nor is reliance thereon now asserted by Kern. It merely served to add another element of confusion to the case.

The gist of the claim is that Kern desired to be elected as a director of Western Pacific, that the president of Western Pacific "advised" Kern that he would recommend his election as a director when Kern's holdings of the stock of Western Pacific reached 5000 shares, that he subsequently became the owner of stock in that amount, and so informed the president, who thereupon "indicated" that he would present Kern's name for election at the directors' meeting on October 3, 1957. It is further alleged that information was sought relative to Kern's suitability as a director, and the written report, a portion of which we have already quoted, was forwarded and considered. This allegedly false and defamatory statement is alleged to have prevented Kern's election as a director and to have damaged his reputation in the sum of $500,000.00.

The various defenses set forth in the answers or amended answers include the assertion that the report was in all respects true, that the one-year Statute of Limitations had run prior to the commencement of the action, and that the report was prepared and sent or used in good faith and without malice and was, under the circumstances, privileged.

Further details will appear as they become relevant to the discussion of the law points.

#### Chase Manhattan and Mason

The original complaint was filed in the Southern District of New York on September 5, 1958. Both this complaint and the summons contained the following description of unknown defendants:

"and 'JOHN DOE' and 'JOHN DOE, INC.' the names 'JOHN DOE' and 'JOHN DOE, INC.' being fictitious, the real name of the defendant, or defendants, being unknown to the plaintiff, said fictitious name being intended to designate the individual, company, organization or corporation which conducted an investigation of the plaintiff and furnished a report concerning him to any or all of the above-named defendants"

While service of process was made on Hettinger on September 5, 1958, and on Western Pacific on September 8, 1958, it was not until after the taking of certain depositions that Kern knew who had "furnished" the report. Accordingly, on September 30, 1958 an order was made adding Chase Manhattan Bank and Mason as defendants, in place of John Doe and John Doe, Inc.; and both were served with copies of the order and the summons and complaint on October 2, 1958.

The principal point of law argued by Kern against Chase Manhattan Bank and Mason is based upon the contention that the action was commenced against these defendants on the filing of the complaint and the delivery of the summons to the Marshal on September 5, 1958.

■ With a few oblique references to New York Civil Practice Act § 215,[3] that

---

number of corporations including a large record company. He is also the executor of an estate account in which satisfactory proportions are maintained. He is very favorably known to several of the officers here. Since he does not ask for accommodation we have no idea of his personal worth. We understand that he spends a good deal of time at his home transact-

ing business from there. I see no indication of any other banks in his picture." (Italics omitted.)

3. New York Civil Practice Act, § 215:
   "*Unknown defendant.* Where the plaintiff is ignorant of the name or part of the name of a defendant, he may designate that defendant, in the summons and in any other process or proceeding in

we hold has nothing whatever to do with this case, reliance is placed on New York Civil Practice Act § 17, the pertinent part of which reads as follows:

"An attempt to commence an action in a court of record is equivalent to the commencement thereof against each defendant, within the meaning of each provision of this act which limits the time for commencing an action, when the summons is delivered, with the intent that it shall be actually served, to the sheriff * * * of the county * * * in which that defendant * * * resides or last resided; or, if the defendant is a corporation, to a like officer of the county in which it is established by law or wherein its general business is or was last transacted or wherein it keeps or last kept an office for the transaction of business. But in order to entitle a plaintiff to the benefit of this section, the delivery of the summons to an officer must be followed within sixty days after the expiration of the time limited for the actual commencement of the action by personal service of the summons or by service thereof without the state, upon the defendant sought to be charged * * *."

Kern's claim is that, as this is a diversity case, we must look to New York law to fix the date of commencement of the action in order to pass upon the defense of the Statute of Limitations, and this is not disputed by appellees who seem to agree, citing Nola Electric Co. v. Reilly, S.D.N.Y., 1949, 93 F.Supp. 164, 169–72.

See also Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520. The argument runs to the effect that the summons was delivered on September 5, 1958 to the Marshal, as the federal equivalent of a Sheriff under New York law, that it was delivered "with the intent that it be actually served," and that actual service within 60 days thereafter constituted, by force of the terms of Section 17, service on September 5, 1958.

The pertinency of the dates becomes apparent when it is observed that the letter acknowledging receipt of the report is dated September 18, 1957. In considering the question of whether the one-year Statute of Limitations had run the District Judge had before him not only the original complaint but the amended complaint, served by leave of the District Judge. Both were based upon the publication of the same alleged defamatory report. Accordingly, if the date of publication was on or prior to September 18, 1957, appellees argued the commencement of the action against Chase Manhattan Bank and Mason on October 2, 1958 was too late.

We hold the action was commenced against these two defendants on October 2, 1958 and that New York Civil Practice Act, § 17 is not applicable to the facts of this case.

It is too plain for reasonable debate that Kern did not know, at the time the original complaint was drafted and filed, and when the summons was delivered to the Marshal, who sent the report to Western Pacific. Indeed, he did not even know whether such person or persons

the action, by a fictitious name or by as much of his name as is known, adding a description identifying the person intended. Where the plaintiff demands judgment against an unknown person, he may designate that person as unknown, adding a description tending to identify him. In either case the person intended is thereupon regarded as a defendant in the action and as sufficiently described therein for all purposes, including substituted service of the summons. When the name

of the remainder of the name or the person becomes known, an order must be made by the court upon such notice, with or without terms, as it prescribes, that the proceedings already taken be deemed amended by the insertion of the true name in place of the fictitious name or part of a name or the designation as an unknown person, and that all subsequent proceedings be taken under the true name."

were individuals or corporations. It is not a case of knowing the identity of the defendants but not knowing their names. Kern had no information whatever on the subject of who these "investigators" were. Section 17 itself and the New York cases make it clear beyond cavil that the Section was never intended to apply to such a situation. Not only does it thus appear that the summons could not have been delivered to the Marshal "with the intent that it shall be actually served"; it is equally clear, and even more decisive of the question at issue, that the summons could not have been delivered with such intent to the proper official of the county "in which that defendant * * * resides or last resided," as Kern could not have known where these defendants resided, if he did not know who they were. New York cases hold that where, through some mistake, the summons was delivered to the official of the wrong county, the Section does not apply. Klien v. Biben, 1946, 296 N. Y. 638, 69 N.E.2d 682; Barko v. Mollica, 2nd Dept., 1957, 5 App.Div.2d 699. Such an absolute requirement of knowledge of defendant's residence seems to us to compel the conclusion that Section 17 does not apply to such unknown defendants as these "investigators."

■ Our decision that the action was commenced against Chase Manhattan Bank and Mason on October 2, 1958, however, is not dispositive of the appeal from the judgment dismissing the complaint or the amended complaint as against them. In addition to the publication that occurred when the report was first received, paragraph sixteen of the amended complaint alleges that the report "was disseminated to the officers, directors and other agents at a meeting of the Board of Directors held on October 3, 1957, and the defendants The Chase Manhattan Bank and Samuel P. Mason knew that it would be so disseminated at this meeting and prepared the report * * * for that particular purpose." We think the fair intendment of the original complaint is to the same effect, although more ambiguously worded. In the mass of confusing matter presented to the District Judge below it is perhaps not surprising that this feature of the case was obscured or overlooked. From what we can make of the record before us the principal argument advanced by Kern, in addition to his contention that New York Civil Practice Act, § 17 was applicable, was that the Statute of Limitations had not run, as he did not discover the facts concerning the report until depositions were taken in September, 1958. The Court below properly held this did not postpone the running of the Statute, citing numerous cases.

■ Stripped of irrelevancies the essence of Kern's claim, as we see it, is that an alleged defamatory report was sent at the request of Western Pacific and a publication of this report or oral versions of it was made at the meeting of the directors held on October 3, 1957 for the purpose, among others, of electing a new director, and prior thereto. If it shall appear at the trial that the report was not disseminated at the meeting on October 3, 1957 and that whatever publication thereof took place, orally or in writing, was prior to one year before the date of the commencement of the action, it will be necessary to sustain the defense of the one-year Statute of Limitations.

Whatever the facts may turn out on the trial to be, Kern is entitled to his day in court. He must be given an opportunity to prove what occurred at the meeting of October 3, 1957 with respect to the report and the effect of the report on his alleged rejection as a director of Western Pacific.

It seems probable that, as alleged, the report was forwarded with the intent that it be disclosed to the directors at the meeting on October 3, 1957. In this connection the judge at the trial will have to decide a number of questions of law just as though he were a judge sitting on the same case in a New York

State court. Where did publication or republication of the report take place [4] and does California or New York law govern the substantive rights and obligations of the parties? [5] Does the republication, even if contemplated or authorized, merely add an increment to the damages, or does it give rise to a separate and distinct claim for relief? [6] We think it unwise and premature for us to comment on such matters at this stage of the case and before the facts have been fully developed through the testimony of witnesses. We now decide nothing with respect to the substantive rights and obligations of the parties on the subject of republication.

■ While the point was not discussed in the opinion below, appellees also now rely upon their defense of qualified privilege as a basis for the affirmance of the judgment of dismissal. But this involves a showing of good faith and lack of malice and we think it clear that, on the record before the District Court, such matters should not be disposed of by summary judgment. See Sartor v. Arkansas Natural Gas Corp., 1944, 321 U. S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130; Shultz v. Manufacturers & Traders Trust Co., W.D.N.Y., 1940, 1 F.R.D. 451. Moreover, we wish to make it clear that we have not given any consideration to the question of whether the privilege exists in the circumstances of this case.

4. See generally, Ostrowe v. Lee, 1931, 256 N.Y. 36, 38, 175 N.E. 505; 1 A.L.R.2d 384, 398 (1948).

5. See generally, Draper v. Hellman Commercial Trust & Savings Bank, 1928, 203 Cal. 26, 263 P. 240; Valentine v. Gonzalez, 1st Dept., 1920, 190 App.Div. 490, 179 N.Y.S. 711; Munafo v. Helfand, S.D.N.Y., 1956, 140 F.Supp. 234, 237; 33 Am.Jur. Libel & Slander § 197, pp. 185–86; Newell, Slander & Libel § 303, p. 339 (4th ed. 1924); Gatley, Libel & Slander, pp. 103–07 (5th ed. 1960).

6. See generally, Newell, supra, § 299, pp. 336–37; 33 Am.Jur. Libel & Slander § 225.5 (1961 Cum.Supp. at p. 38).

The judgment in favor of Chase Manhattan Bank and Mason must be reversed.

### Western Pacific Railroad Company and Hettinger

Quite different questions of law control our decision on the appeal from the summary judgment granted in favor of Western Pacific and Hettinger.

On September 10, 1958 Kern filed a complaint in the United States District Court for the Northern District of California. Western Pacific was named as one of the defendants and was duly served with copies of the summons and complaint. Hettinger, a member of the Board of Directors of Western Pacific, was also named as a defendant but he was not served nor was jurisdiction of his person obtained by general appearance in the action or otherwise. The claim for relief in this California action is based upon substantially the same facts as are alleged in the complaint and the amended complaint now before us.

■ As the case was permitted to lie dormant for many months, it was placed on the regular dismissal calendar pursuant to Rule 14 of the Rules of the District Court for the Northern District of California and a hearing was had and the Court considered affidavits filed in support of and in opposition to the dismissal, as well as arguments of counsel presented orally. The result was a dismissal under Rule 41(b) [7] of the Federal

7. Federal Rules of Civil Procedure, Rule 41(b):
   "Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the

Rules of Civil Procedure, and the order of dismissal does not state that the case is dismissed without prejudice.

The memorandum that is part of the "Order Dismissing Action" refers to the period of twenty-one months during which Kern remained inactive in the case. Reference is also made to the case now before us as pending in the Southern District of New York. Much of the discussion in the memorandum seems to indicate that the Court thought there was no merit in Kern's claim. In this somewhat ambiguous state of the record, we shall assume *arguendo* that the dismissal was for failure to prosecute. Nevertheless, in view of the unequivocal language of Rule 41(b), and the absence of the words "without prejudice," we must and do decide that the dismissal was on the merits and that it was intended to be on the merits.

■ It is Kern's contention, however, that California and not federal law controls the determination of the character and extraterritorial effect of the judgment; and he cites numerous California cases for the proposition that dismissals for lack of prosecution in California courts are necessarily without prejudice and hence cannot be a proper basis for a defense of *res adjudicata*.

We disagree. One of the strongest policies a court can have is that of determining the scope of its own judgments. Cf. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity. The rights and obligations of the parties are fixed by state law. These may be created, modified and enforced by the state acting through its own judicial establishment. But we think it would be strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. The Erie doctrine, [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] is not applicable here; and the judgment in favor of Western Pacific is affirmed.

■ As the claims asserted against Western Pacific in the two actions were to all intents and purposes identical, we have no alternative other than to hold the first judgment to be an absolute bar to the maintenance of the second action. Cromwell v. County of Sac., 1876, 94 U.S. 351, 24 L.Ed. 195; Curacao Trading Co. v. William Stake & Co., S.D. N.Y., 1945, 61 F.Supp. 181. Compare Olwell v. Hopkins, 1946, 28 Cal.2d 147, 168 P.2d 972; Restatement, Judgments § 48 (1942). See also U.S.Const., Art. IV, § 1; 28 U.S.C. § 1738.

The defense of Hettinger rests upon a different basis. As he was not served with process and did not appear in the California action, no binding adjudication was made in his favor when the case was dismissed. Can his plea of collateral estoppel be sustained? We think not.

■ Regardless of which law we turn to to decide this question,[8] the result is the same. Although in New York and California mutuality of estoppel is no longer necessarily a prerequisite for a successful plea of collateral estoppel, Israel v. Wood Dolson Co., 1956, 1 N.Y. 2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97; Bernhard v. Bank of America Nat. Trust

close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

8. See generally, Behrens v. Skelly, 3 Cir. 1949, 173 F.2d 715, cert. denied, 338 U.S. 821, 70 S.Ct. 66, 94 L.Ed. 498; Eisel v. Columbia Packing Co., D.Mass., 1960, 181 F.Supp. 298; Hinchey v. Sellers, 1959, 7 N.Y.2d 287, 197 N.Y.S.2d 129, 165 N.E.2d 156.

& Sav. Ass'n, 1942, 19 Cal.2d 807, 122 P.2d 892; Ruben v. City of Los Angeles, 1959, 51 Cal.2d 857, 337 P.2d 825, appeal dismissed, 361 U.S. 30, 80 S.Ct. 118, 4 L.Ed.2d 98, we see no indication that any jurisdiction would find collateral estoppel applicable where, as here, the issues involved in the present suit were not clearly decided by the prior judgment.

Furthermore, while Hettinger vigorously asserts that the claim asserted by Kern against him is in all respects the same as the claim asserted against Western Pacific, an analysis of the possible grounds for liability against the two shows clearly that the basis of possible liability against the two are not necessarily the same. We must remember that the judgment appealed from was not rendered after a trial where all the facts were fully disclosed, but on summary judgment, on the theory that the case presented no *bona fide* and material issues of fact. Much may depend upon what was said and by whom at the meeting of the Board of Directors on October 3, 1957. Here again we think Kern is entitled to his day in court.

Affirmed as to Western Pacific and reversed as to Chase Manhattan Bank, Mason and Hettinger.