Robert LINDSAY, Plaintiff,

v.

CUTTER LABORATORIES,
INC., Defendant.

No. 78–C–511.

United States District Court,
W. D. Wisconsin.

April 22, 1982.

John Anthony Bonina, Brooklyn, N. Y.,
James R. Cole, Ross & Stevens, S. C., Madison, Wis., for plaintiff.

Thomas E. Pfalzer, O'Connor, Cohn, Dillon & Barr, San Francisco, Cal., Donald H. Carlson, Riordan, Crivello, Carlson, Mentkowski & Henderson, Milwaukee, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This is a products liability action brought against the manufacturer of an allegedly defective prosthetic aortic valve which was implanted in plaintiff's heart. Plaintiff proceeds against defendant on three alternative theories of liability: negligence, breach of warranty, and strict liability in tort. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332.

Presently before the court is plaintiff's motion for partial summary judgment; plaintiff asks the court to enter judgment against defendant on the issue of liability and to order a trial limited to determining the amount of plaintiff's damages. In support of this motion, plaintiff advances the contention that defendant should be collaterally estopped from litigating the issue of its liability under negligence or strict liability in tort because the identical issue was decided adversely to defendant in two diversity cases consolidated for trial in the United States District Court for the Eastern District of New York: *Scura v. Cutter Laboratories, Inc.*, 77–C–2359 and *Weber v. Cutter Laboratories, Inc.*, 79–C–655.

I find that there is no genuine dispute with respect to the following facts.

## FACTS

Plaintiff filed this lawsuit on October 24, 1978. This is one of several diversity actions still pending before federal district courts in various parts of the country, all brought against defendant for alleged defects in the Braunwald-Cutter aortic valve. On February 28, 1979, the Judicial Panel on Multi-District Litigation, under 28 U.S.C. § 1407, concluded that the related actions would benefit from centralized pretrial proceedings and it ordered that these be conducted by Judge Weinstein in the United States District Court for the Eastern District of New York. The present action was transferred to Judge Weinstein as a "tag-along" action. Once discovery was completed, each case was remanded to the court of its origin. The first cases that went to trial following the consolidated discovery procedures were the cases of *Weber v. Cutter* and *Scura v. Cutter*; these were tried together in the United States District Court for the Eastern District of New York. Applying New York substantive law, the jury returned a verdict that defendant was liable under the theories of negligence and products liability. Plaintiff Lindsay was not a party or in privity with any party in the *Weber/Scura* litigation.

One of the first lawsuits filed against defendant for alleged defects in the Braunwald-Cutter valve was that of *Molgaard v. Cutter Laboratories, Inc.*; the action was begun in this court in November, 1977. Because *Molgaard* was nearly ready for trial when the Multi-District Judicial Panel considered the request for consolidated pre-trial proceedings, it was not included in the transfer to the United States District Court for the Eastern District of New York. In November, 1978, a jury verdict was returned which found defendant not liable under Wisconsin law.

## OPINION

■ The principle of collateral estoppel is a judge-made doctrine which operates to preclude a party from contesting identical matters that it had actually litigated and which were necessary to the outcome of a prior action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552 (1979). Such preclusion "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979).

Plaintiff attempts to invoke the doctrine offensively; that is, plaintiff seeks to bind defendant on the liability issues determined by the jury in the *Weber/Scura* litigation, even though plaintiff was not a party or privy to that action.

On the facts of this case, the federal doctrine might permit the offensive use of collateral estoppel, *Parklane Hosiery, supra*; however, a Wisconsin court would not. For the most part, Wisconsin continues to adhere to the mutuality rule, which allows a party to invoke the principle of collateral estoppel only if he were a party or in privity with a party to the prior action; *i.e.*, only one who would also be bound by a prior judgment can seek to invoke it. *State ex rel. Flowers v. Department of Health & Social Services*, 81 Wis.2d 376, 260 N.W.2d 727 (1978). A review of the Wisconsin law reveals that this rule has been relaxed slightly, but only in the case where the party seeking to invoke the doctrine had a close relationship with a party to the previous litigation, although this relationship did not rise to the level of privity or control over the prior action, *e.g.*, a marital relationship. *Cf. Hernke v. Cornet Insurance Company*, 72 Wis.2d 170, 240 N.W.2d 382 (1976), where the wife of a party to a prior negligence case arising out of an automobile accident in which the wife was also personally involved was allowed to invoke the doctrine of *res judicata* even though she had neither been a party nor had control over her husband's litigation. In the present action, plaintiff does not have the sufficient degree of relationship with the plaintiffs in *Weber/Scura* to avoid the impact of the mutuality rule. For this reason

alone, if Wisconsin law controls, plaintiff could not invoke collateral estoppel.

Because of this difference between state and federal law on the requirement of mutuality, the threshold inquiry in deciding the present motion is whether a federal court sitting in diversity must apply the law of the state in which it sits or whether it should apply federal law when asked to collaterally estop a party to a previous federal diversity action from re-litigating issues that were litigated and necessary to the earlier determination.

In their briefs, both sides assert that, because this is a diversity action, the *Erie* doctrine requires this court to apply Wisconsin law.[1] However, if the matter is one of federal procedure, the parties cannot dictate by their agreement whether this court should follow state or federal law. I am required to conduct an independent examination of the case law in order to ascertain which law I am constrained to follow.

Two circuit courts of appeals have addressed directly the question of which law applies when a federal court sitting in diversity is asked to give preclusive effect to issues determined in an earlier federal diversity action. The earliest reported decision on this issue is *Kern v. Hettinger*, 303 F.2d 333 (2d Cir. 1962), where the court held that federal law controlled, reasoning that:

> One of the strongest policies a court can have is that of determining the scope of its own judgments.... It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diver-

sity. The rights and obligations of the parties are fixed by state law. These may be created, modified, and enforced by the state acting through its own judicial establishments. But we think it would be strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. The *Erie* doctrine [citations omitted] is not applicable here....

*Kern*, 303 F.2d, at 340.

The *Kern* analysis has been adopted by the Court of Appeals for the Fifth Circuit, beginning with *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), reh'g denied 514 F.2d 1072 (5th Cir.), cert. denied 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); and most recently reiterated in *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540–541 (5th Cir. 1981).

These same choice of law questions were also at issue in a district court decision, *In re Air Crash Disaster, Dayton, Ohio, on March 9, 1967*, 350 F.Supp. 757, 763–764 (S.D.Ohio 1972). In that case, the court gave careful consideration to the issue, quoting at length from *Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527 (4th Cir. 1970) cert. denied, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971)[2]:

> "In deciding that the question of the recognition to be given by one federal court to proceedings in another federal court should be resolved as a matter of federal law, we do no violence to the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] ... which requires that federal courts in the diversity jurisdiction decide cases in accordance with state law, whether decisional or

---

1. Plaintiff's position on this point is somewhat puzzling. Plaintiff first states that Wisconsin law applies and then argues that because the mutuality rule has been abolished in other states, it should not be binding in Wisconsin. This argument ignores the law in Wisconsin.

2. In *Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527 (4th Cir. 1970), the Court of Appeals for the Fourth Circuit addressed the question whether federal law or Virginia law controlled in deciding if the commencement of an earlier products

liability action in a federal district court in Kentucky had tolled the Virginia statute of limitations when the identical action was commenced in a federal district court in Virginia. The court focused on the uniform nature of the federal court system and concluded that federal law applied because of the overriding federal interest in the effective and uniform administration of justice. *Atkins* was also cited with approval in *Roberts v. Sears Roebuck & Co.*, 573 F.2d 976, 984 (7th Cir. 1981).

statutory. The contours of that requirement have been delineated with increasing clarity by subsequent cases which have made it plain that not every issue arising in a diversity case is governed by state law. *See, e.g., Guaranty Trust Co. [of New York] v. York*, 326 U.S. 99 [65 S.Ct. 1464, 89 L.Ed. 2079] . . . ; *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525 [78 S.Ct. 893, 2 L.Ed.2d 953] . . . ; *Hanna v. Plumer*, 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8]. . . .

The essence of our Federal system is the allocation of law-making functions between state and national authorities and the decision in *Erie* was, at least in part, a recognition of the fact that this fundamental governmental scheme is seriously undercut if the federal courts, in serving as a forum for the enforcement of state-created rights formulate their own rules in areas which are properly matters of state, not federal, concern.

"The problem facing the federal courts since *Erie* has been to determine which questions arising in diversity litigation are matters of state concern which should be answered by reference to state law and which questions are matters of federal concern which can be answered by reference to federal law. *Erie* and its progeny may be seen as an attempt to formulate a workable doctrine governing choice of law in diversity actions which would prevent impermissible federal court interference with state rules reflecting policy considerations lying within the realm of state lawmaking competence. *Guaranty Trust Co. [of New York] v. York*, 326 U.S. 99, 109 [65 S.Ct. 1464, 1470, 89 L.Ed. 2079]; *Hanna v. Plumer*, 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8] (concurring opinion of Mr. Justice Harlan).

" . . .

"It is, of course, neither possible nor necessary for federal courts to be totally neutral in the adjudication of state-created rights. It is not possible simply because federal courts are not protean and are unable to transform themselves into exact replicas of their state counterparts.

That state and federal judicial systems are not identical will inevitably mean that the choice of forum will have some effect upon the course of litigation. Some adoption of state court procedures by federal courts sitting in diversity may be feasible, but it may also be in conflict with fundamental interests of the federal courts in the conduct of their own business and the maintenance of the integrity of their own procedures, the legitimate interests of a federal forum, *qua* forum. "Literal application of some of the language in *Guaranty Trust Co. [of New York] v. York, supra*, might appear to compel the conclusion that a federal court must apply state law in every case where failure to do so might make a difference in the outcome of the litigation. The language of that opinion, however, has been moderated. Now, in the choice between state and federal law in the disposition of procedural problems such as the one before us, we properly take account of federal interests and the effective functioning of the federal courts as a cohesive, relatively unitary, system for the administration of justice." *Atkins*, 435 F.2d at 535–536.

Relying on this reasoning, the Ohio district court concluded that

In order to guarantee the effective functioning of the various federal district courts as components of a unitary system for the administration of justice, the force and effect of a judgment rendered in a federal district court upon an action pending in other federal district courts should properly be determined under federal law.

*In re Air Crash Disaster*, 350 F.Supp. at 764. The court then proceeded to apply collateral estoppel *against* the plaintiff, a stranger to the previous litigation, an action unprecedented under federal law. On appeal, the Court of Appeals for the Sixth Circuit reversed, *sub nom. Humphreys v. Tann*, 487 F.2d 666 (6th Cir. 1973), holding that application of collateral estoppel against a stranger to the prior action denied the plaintiff his day in court, guaranteed

him under the due process clause of the Fifth and Fourteenth Amendments.

On the other side of the argument, namely that state law controls, the Court of Appeals for the District of Columbia Circuit has held without explanation that a federal court sitting in diversity must look to local law to determine whether collateral estoppel may be employed. *See Gatewood v. Fiat*, 617 F.2d 820, 826 n.11 (D.C.Cir.1980); *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 851 n.17 (D.C.Cir.1981).

Two circuit courts have discussed the choice of law problem, without resolving the issue. In *Garrigan v. Giese*, 553 F.2d 35, 36–37 n.2 (8th Cir. 1977), the Court of Appeals for the Eighth Circuit concluded it did not have to decide whether federal or state law applies in determining the collateral estoppel effect of an issue previously adjudicated in another federal forum, because the question would have been decided the same way under either body of law.

Similarly, in *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1179–1181 (3rd Cir. 1972), the Court of Appeals for the Third Circuit did not have to choose between state or federal law when faced with deciding the collateral estoppel effect of an arbitration award because there would have been no difference in outcome under federal or state law. The court reached this conclusion only after an extended *Erie* analysis in which it hinted that the strong federal policy against multiplicative litigation, articulated in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1972), might tip the balance in favor of the application of federal law.

I have engaged in this rather lengthy discussion of the decisions from other circuits because, like the District of Columbia Circuit, the Court of Appeals for the Seventh Circuit has applied state law without explanation. *Morgan v. Inter-Continental*

*Trading Corporation*, 360 F.2d 853 (7th Cir. 1966). *Morgan* has been relied on by several district courts for the proposition that a federal court sitting in diversity must apply the state law on collateral estoppel: *Capitol Indemnity Corp. v. St. Paul Fire & Marine Ins. Co.*, 357 F.Supp. 399 (W.D.Wis.1972); *Chrysler Corp. v. Lakeshore Commercial Finance Corp.*, 389 F.Supp. 1216, 1220–1221 (E.D.Wis.1975); *Falk v. Falk Corp.*, 390 F.Supp. 1276 (E.D.Wis.1975). It is significant that in each of these cases, the district court was asked to give preclusive effect to issues decided in a prior *state* court action. In each of these cases, the conclusion that state law applied would be no different had the court employed the *Kern* analysis. *Kern* stands for the proposition that the finality of issues necessary to an earlier judgment should be determined by the rules of the forum which rendered it, a proposition echoed in the proposed Restatement 2d of Judgments §§ 134 and 135 (1980). This analysis underlies the Second and Fifth Circuits' decision to apply federal law when faced with giving preclusive effect to issues decided in a previous *federal* action.

While the district court decisions can be distinguished, *Morgan* itself cannot be dispensed with so handily. In *Morgan*, the court without discussion applied state law in giving preclusive effect to issues litigated between the same parties in an earlier federal action. At first blush, *Morgan* appears to dictate the result which should follow here. Closer scrutiny raises questions whether *Morgan* is still good law today. When *Morgan* was decided, there was no conflict between the state and federal law on collateral estoppel; both federal and state law required mutuality. It was only long after *Morgan* was decided that the United States Supreme Court abolished the need for identity between parties, paving the way for the offensive use of collateral estoppel in *Parklane Hosiery*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552.[3]

**3.** In another recent decision, the court of appeals applied state law without discussion. *See Gasbarra v. Park-Ohio Industries, Inc.*, 655 F.2d 119 (7th Cir. 1981), where the court was asked to resolve whether the related doctrine of *res judicata* had been properly applied below by the district court when it held that plaintiff was barred from relitigating a claim he could

I am not totally convinced that the Seventh Circuit would require the application of state law were it faced with a conflict between federal or state law on the applicability of collateral estoppel to issues determined in a previous federal diversity judgment. Nonetheless, while I am persuaded by the analysis of the Second and Fifth Circuits that federal law should apply, I am constrained by the decisions available from the Seventh Circuit. For this reason alone, I conclude that Wisconsin law controls. Because Wisconsin continues to adhere to the mutuality rule, plaintiff cannot prevail in his attempt to employ the doctrine of collateral estoppel offensively.

Defendant makes the additional argument that plaintiff would not be entitled to preclude relitigation of the negligence and defective product issues because of the prior inconsistent decision in *Molgaard* where this court, applying Wisconsin law, found defendant not liable in negligence or strict liability. Defendant relies on a line of cases that refer frequently to the famous train wreck example of Professor Currie, which is oft-cited as proof of the evils of the offensive use of collateral estoppel. As an example of the unfairness in applying collateral estoppel against a defendant sued by multiple plaintiffs, Currie hypothesizes fifty lawsuits arising out of a train accident, of which defendant wins the first twenty-five. Defendant then loses against plaintiff in the twenty-sixth case. Under a strict application of the offensive use of the doctrine, the remaining twenty-four plaintiffs could assert collateral estoppel successfully, despite the previous judgments of no liability. Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine*, 9 Stan.L. Rev. 281 (1957).

I do not believe that the dangers feared by Professor Currie exist here. First, there has been only one prior inconsistent decision and that decision was reached without benefit of the extensive discovery available in *Weber/Scura*. In these cases, unlike Professor Currie's example where there has been a single mass catastrophe, it was not possible to consolidate all of the plaintiffs into one action, because the proof of causation will differ for each plaintiff. Furthermore, there is no indication that plaintiffs are pursuing their claims individually on the gamble that sooner or later one of them might find a sympathetic jury whose judgment can be applied in subsequent cases. Finally, the papers before me indicate that defendant put forward its best defense in *Weber/Scura*. It held back nothing. Indeed, it had every incentive to litigate fully this first of what it knew would be a series of related actions. *See Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 991–994 (7th Cir. 1979). These considerations are persuasive in the determination that application of offensive collateral estoppel would not be unfair to defendant.

A final point. Even if the mutuality rule were not a barrier, plaintiff would not be entitled under the *Weber/Scura* judgments to summary judgment on the issue of defendant's liability in negligence or in strict liability in tort. In the *Weber/Scura* cases, both theories of liability necessarily required the jury to find both that the defendant had breached its duty of care or sold a defective product, *and* that this breach or sale caused plaintiffs' injuries. On this second element of causation, defendant would not be entitled to preclusive effect because collateral estoppel is available only on issues actually litigated; the question of the causation of the injuries to Robert Lindsay, plaintiff in this case, was not litigated in the *Weber/Scura* action. 1B Moore's Federal Practice, ¶ 0.443[1] (1965).

In conclusion, but for the Wisconsin law adhering to the mutuality rule, I would have no problem finding defendant collaterally estopped from relitigating the issues of

have but did not litigate in a prior federal diversity action. As in *Morgan* there appears to be no conflict in state and federal law of *res judicata*. Furthermore, because the question of whether claims can be split or not seems more properly to be one of state concern since it is closely tied to the state-created cause of action, this decision might not mandate the same finding on the applicability of collateral estoppel.

the breach of its duty to plaintiff or of the defectiveness of the aortic valve at the time of sale. However, because I believe the Seventh Circuit's decisional law constrains me to follow Wisconsin law, and because plaintiff was not a party or in privity with a party to the *Weber/Scura* action in the United States District Court for the Eastern District of New York, plaintiff cannot avail himself of the doctrine of collateral estoppel.

### ORDER

IT IS ORDERED that plaintiff's motion for partial summary judgment is DENIED.