**In re Multidistrict Civil Actions Involving the AIR CRASH DISASTER near DAYTON, OHIO, ON MARCH 9, 1967.**

**No. 3834 ML.**

United States District Court,
S. D. Ohio, W. D.

Sept. 29, 1972.

See also Jud.Pan.Mult.Lit., 310 F. Supp. 798.

Theodore E. Wolcott, New York City, for Humphreys.

Walter E. Rutherford, Haight, Gardner, Poor & Havens, New York City, for Tann Co.

## MEMORANDUM OPINION AND ORDER

WEINMAN, Chief Judge.

On March 9, 1967 a DC–9 passenger aircraft owned and operated by Trans World Airlines, Inc. and a Beech Baron aircraft owned and operated by the Tann Company collided in mid-air near Dayton, Ohio. As a result of this air disaster, all occupants of both planes were killed. Numerous civil actions seeking recovery for alleged wrongful death and property damage were filed in this Court, other federal district courts and in various state courts across the country. Six actions pending in other federal district courts were transferred to this Court by the Judicial Panel on Multidistrict Litigation for consolidated and coordinated pretrial proceedings pursuant to Section 1407, Title 28 U.S.C. Among the actions transferred to this Court was a passenger wrongful death action against the Tann Company captioned Humphreys v. Herman Tann, et al. which was originally commenced in the United States District Court for the Eastern District of Michigan, Southern Division.

On July 15, 1970 this Court conducted its first pretrial conference for the purpose of scheduling consolidated discovery with respect to all actions pending before the Court arising from the mid-air collision. Thomas F. Wolcott, attorney for plaintiff Humphreys in Case No. 3834ML(F) was among the attorneys attending this first pretrial conference. On July 22, 1970 this Court issued a pretrial order which among other things set forth a schedule for the completion of consolidated discovery in these multidistrict actions.

In accordance with this Court's first pretrial order consolidated discovery was expeditiously completed in these actions. Counsel for all parties including counsel for plaintiff Humphreys was given a full and ample opportunity to participate in all consolidated discovery proceedings, to ascertain all relevant facts concerning the mid-air disaster near Dayton, Ohio and to frame the issues.

After the completion of consolidated discovery the next pretrial conference was scheduled for December 15, 1970. On November 4, 1970 this Court sent an information order to all attorneys advising them that in view of the completion of discovery all counsel shall make a statement to the Court of what he or they expect to prove and further advising all counsel that the Court was planning an early date for trial and would consider recommendations concerning the joinder of party plaintiffs and whether or not there should be separate trials on liability and damages.

The second pretrial conference was held as scheduled. At this conference Craig Spangenberg, Esq. of the Cleveland, Ohio Bar, an acknowledged special-

ist in the representation of plaintiffs in air disaster cases delivered a statement of the facts which the passenger plaintiffs would attempt to prove in establishing acts of negligence on the part of both Trans World Airlines and the Tann Company. Plaintiffs' counsel who were present at the pretrial conference concurred in Mr. Spangenberg's statement of facts. It was further determined at this second pretrial conference that the passenger wrongful death action captioned Downey v. Trans World Airlines, Inc. and Tann Company would be the first case to proceed for trial. No objection was voiced to the trial of the Downey case first.

For some unexplained reason, Thomas Wolcott, attorney for plaintiff Humphreys, who had received notice of the scheduled December 15 pretrial conference and this Court's desire for a statement of facts from all parties failed to attend the second pretrial conference.

From March 22, 1971 to April 7, 1971 the wrongful death action brought by Vera Downey against Trans World Airlines and Tann Company, Civil Action No. 3521ML was tried to a jury in this Court. At the trial plaintiff was represented by attorney Craig Spangenberg of the Cleveland, Ohio Bar, an extremely experienced and highly competent plaintiff's lawyer, who has a reputation among the Bar as a specialist in air disaster cases. Mr. Spangenberg who was thoroughly familiar with all the facts surrounding the mid-air disaster presented to the jury in the Downey case all the claimed acts of negligence which were acknowledged by all the plaintiffs as constituting a basis for a finding of liability on the part of the Tann Company. In addition attorney Daniel J. O'Neill, counsel for Trans World Airlines, an equally qualified and competent trial attorney who also possessed a high degree of expertise in the highly technical area of aviation law, presented evidence and vigorously attempted to persuade the jury that the sole proximate cause of the mid-air collision was the negligence of the Tann Company pilot. After receiving all relevant evidence concerning the liability of Tann Company and hearing vigorous and well reasoned arguments attempting to fix the responsibility for the mid-air disaster upon the Tann Company pilot, the jury returned a general verdict in favor of the plaintiff in the amount of $300,000 against Trans World Airlines only and found against plaintiff on her claims against the Tann Company. No appeal was filed by any party and upon the satisfaction of the judgment by defendant Trans World Airlines, the judgment in the Downey case became final.

After the judgment in the Downey case became final, a series of motions were filed in the pending Multidistrict cases against the defendant Trans World Airlines seeking to invoke the doctrine of res judicata or collateral estoppel based on the final judgment in the Downey case. In a memorandum opinion issued January 20, 1972 this Court resolved these pending motions with the exception of the motion filed by the Tann Company for summary judgment on the basis of the doctrine of collateral estoppel in all outstanding passenger actions pending against the Tann Company. At that time the outstanding passenger actions were as follows:

Clough v. Tann Company, Civil Action No. 3656ML, Palmer v. Tann Company, Civil Action No. 3834ML(B) and Humphreys v. Tann Company, Civil Action No. 3834ML(F). The Clough and Palmer cases were subsequently settled.

This Court, noting that there is a discernible trend in the law toward the abandonment of the strict requirement of mutuality and privity in the application of the doctrine of collateral estoppel requested the filing of additional briefs on this pending motion and scheduled oral argument following the conclusion of the trial of the federal tort claim actions against the United States arising out of the mid-air disaster. The trial of the tort claims was scheduled for May 2, 1972.

On April 18, 1972 the Tann Company pursuant to this Court's request filed a supplemental brief in support of its motion. No briefs were filed by the other plaintiffs in the passenger cases against the Tann Company.

On May 2, 1972, prior to the trial of all tort claim actions against the United States, this Court held a settlement conference for all pending cases against the United States and the Tann Company. Attorneys representing plaintiffs in actions brought against the Tann Company in both the state and federal courts participated. As a result of this settlement conference all actions against the United States and all actions against the Tann Company in the state and federal courts were successfully settled with the exception of the cases of Clough v. Tann Company, Case No. 3656ML and Humphreys v. Tann Company et al., Case No. 3834ML(F). Prior to the drafting of this opinion the Court has been advised that the Clough case has settled. Unmistakably the verdict of the jury was the motivating factor leading to the settlement of these actions. The Humphreys' case is the only passenger action that has not been disposed of as a result of the verdict of the jury in the Downey case.

On May 3, 1972, after the federal tort claims actions and the actions against Tann Company were settled, this Court heard oral argument on the pending motion. Counsel for plaintiff Humphreys in Civil Action No. 3834ML(F) was present and presented oral argument.

Plaintiff Humphreys was not a party to the Downey case in which the liability or responsibility of the Tann Company for the mid-air disaster was determined. Thus the pending motion for summary judgment in the passenger cases raises the interesting but difficult question of whether the doctrine of res judicata or collateral estoppel can be applied against a person who was not a party to the prior action.

■ Prior to reaching the merits of the pending motion, this Court must re-solve the preliminary question of what law governs the collateral estoppel effect of a judgment rendered by this Federal Court in a diversity case. In resolving other motions invoking the doctrine of collateral estoppel filed in other multi-district cases transferred from the United States District Court for the Eastern District of Michigan, this Court without the benefit of briefs assumed that state law applied. In reliance upon the decision of the Supreme Court in the case of Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) this Court concluded that the law of the State of Michigan, where the transferor Court is held, controlled and further reasoned that Michigan conflicts of law rules would direct the application of the law of Ohio where the tort occurred. Since jurisdiction over all these multi-district cases was based on diversity of citizenship the application of state law seemed to be required by the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and the "out-come determinative" test set forth in the case of Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

After further consideration this Court developed some doubt as to whether state law should govern the force and effect of a prior federal court judgment upon a second action pending in a federal district court. It seemed logical to this Court that countervailing considerations relating to the efficient administration of justice in the federal court system—control over bulging federal court civil dockets and the efficient allocation of judicial time might well dictate the application of a federal rule governing the preclusive effect of prior federal court judgments upon other pending federal court cases involving identical issues. The Court, therefore, inquired during oral argument on the pending motion as to whether federal or state law governed the preclusion or collateral estoppel issue raised herein.

In response to this Court's inquiry, counsel for the defendant Tann Compa-

ny pointed out that cases decided subsequent to Guaranty Trust Co. of New York v. York, supra have shown a trend away from strict adherence to outcome determinative factors arising under state law in diversity actions where there exists a countervailing federal interest in the administration of the federal judicial system. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), rehearing denied 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958); Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Atkins v. Schmutz Manufacturing Co., 435 F.2d 527 (C.A. 4, 1970); and Kern v. Hettinger, 303 F.2d 333, 340 (C.A. 2, 1962). Counsel for the Tann Company further asserts that the policy of the Multidistrict Litigation Act, 28 U.S.C. §§ 1407 et seq. the fact that the accident occurred in airspace under the exclusive sovereignty of the United States of America, 49 U.S.C. § 1508(a) and the fact that the Federal Government alone is charged with the promulgation of rules and regulations relating to the use of airspace, 49 U.S.C. §§ 1303(c) and (e), 1348(a)(b) and (c) strengthen the argument that federal law should be the overriding consideration on the issue of the preclusive effect of a federal court judgment. Learned commentators on the question of issue preclusion or res judicata have advanced the view that in diversity cases the federal interest in the effective administration of the federal court system may militate toward the adoption of a federal rule governing the law of preclusion. Vestal, Res Judicata Preclusion, Chapter 15 (Matthew Bender 1969); Res Judicata in the Federal Courts; Application of Federal or State Law, 51 Cornell Law Quarterly 96 (1965).

For the reasons that follow the Court concludes that the policies underlying the doctrine of issue preclusion or res judicata that is—economy of judicial time and the need for the termination of legal controversies wherein the same issues have been actually litigated—are so closely integrated with a predominant federal interest in the effective and efficient administration of the federal judicial system that federal law not state law should determine the preclusive effect to be given a federal court judgment in diversity actions upon another federal action involving the same issue.

■ The holdings of the Byrd and Hanna cases stand for the proposition that a state rule need not be blindly followed in a diversity case where the state rule is not integrally related to state created rights and obligations but relates merely to the form or mode of enforcement and a conflicting federal rule exists supported by a countervailing federal policy which would be disrupted by the application of the state rule. (In Byrd the 7th amendment guarantee of trial by jury and in Hanna the inherent federal power in matters relating to procedure within the federal court system).

■ The Erie doctrine obliges federal district courts in diversity actions to apply state substantive law defining the rights and obligations of persons with respect to a state created cause of action. As the Court of Appeals for the Fourth Circuit has stated:

"The Erie doctrine clearly leaves for determination by the states questions concerning the definition of the basic state-created cause of action, with the federal courts being required to take a position of substantive neutrality. But legal rights are not self-executing, and they can not be viewed in total isolation from the rules governing their judicial enforcement." Atkins v. Schmutz Manufacturing Company, 435 F.2d 527, 536 (C.A. 4, 1970).

Thus the Erie doctrine clearly mandated that this Court apply in the trial of the Downey case the decisional and statutory law of State of Ohio defining the duty of care owed by Trans World Airlines to its paying passengers, the duty of care owed by the Tann Company to the deceased passengers and the measure of damages in wrongful death actions. Clearly these matters go to the

essence of a state created cause of action and pertain to rules of conduct which under Erie must be left to the determination of the forum state. However, once a judgment has been rendered in accordance with the standards of conduct fixed by state law, it does not necessarily follow that the preclusion or res judicata effect of that judgment upon other pending federal actions should be governed by state law. Whereas, the states have a legitimate and predominant interest in defining all rights and obligations arising under a state created cause of action, the question of the preclusive effect of a federal court judgment raises different considerations concerning the economy of judicial time and the avoidance of multiple or needless litigation which are integrally related to the interest of the federal judiciary in the efficient and orderly administration of justice in the federal courts. The states' interest and concern in these matters is at best peripheral and the overriding federal interest in the administration of the federal judicial system compels the adoption of a federal rule.

The Court finds support for this view applying federal rather than state law in the cases of Kern v. Hettinger, 303 F.2d 333 (C.A.2, 1962) and Atkins v. Schmutz Manufacturing Company, 435 F.2d 527 (C.A.4, 1970).

In the Kern case, supra, the Court of Appeals for the Second Circuit was faced with the issue of whether the effect of a judgment of dismissal for lack of prosecution in a federal district court sitting in California was governed by federal law or the law of the State of California. After the dismissal of the California federal case plaintiff in Kern filed a second action based on the same claim that was asserted in the prior California federal case in the Southern District of New York. Under Rule 41(b) Federal Rules Civil Procedure a dismissal of an action, in the absence of the words "without prejudice" constitutes a dismissal on the merits. The plaintiff urged the adoption of a contrary California rule which provided that a dismissal for lack of prosecution was necessarily a dismissal without prejudice. In holding that federal law applies the Second Circuit stated:

"One of the strongest policies a court can have is that of determining the scope of its own judgments. Cf. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because of source of federal jurisdiction is diversity. The rights and obligations of the parties are fixed by state law. These may be created, modified and enforced by the state acting through its own judicial establishment. But we think it would be strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. *The Erie doctrine,* [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188] *is not applicable here;* and the judgment in favor of Western Pacific is affirmed. [emphasis added]."

Kern v. Hettinger, etc. et al., 303 F.2d at page 340.

In Atkins v. Schmutz Manufacturing Company, supra the Fourth Circuit was faced with the question of whether federal law or Virginia law governed the issue of whether the commencement of a products liability action in a federal district court in Kentucky tolled the Virginia statute of limitations with respect to an identical action commenced in a federal district court in Virginia. The Fourth Circuit recognizing the unitary nature of the federal court system held that the issue presented was essentially procedural and concluded that an overriding federal interest in the effective functioning of federal courts as a cohesive, relatively unitary system for the administration of justice dictated that the tolling effect of the pendency of an

identical suit in another federal court be determined as a matter of federal law. The Court, applying federal law, concluded that the commencement of an identical suit in another district court tolled the Virginia statute of limitations despite conflicting Virginia decisional law which would have barred the subsequent suit commenced in Virginia.

In reaching this conclusion Chief Judge Haynsworth speaking for the majority made the following pertinent observations:

"In deciding that the question of the recognition to be given by one federal court to proceedings in another federal court should be resolved as a matter of federal law, we do no violence to the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, which requires that federal courts in the diversity jurisdiction decide cases in accordance with state law, whether decisional or statutory. The contours of that requirement have been delineated with increasing clarity by subsequent cases which have made it plain that not every issue arising in a diversity case is governed by state law. *See, e. g.*, Guaranty Trust Co. [of New York] v. York, 326 U.S. 99, 65 S.Ct. 1464 [89 L.Ed. 2079]; Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8; Szantay v. Beech Aircraft Corp., 4 Cir., 349 F.2d 60.

"The essence of our Federal system is the allocation of law-making functions between state and national authorities and the decision in *Erie* was, at least in part, a recognition of the fact that this fundamental governmental scheme is seriously undercut if the federal courts, in serving as a forum for the enforcement of state-created rights, formulate their own rules in areas which are properly matters of state, not federal, concern.

"The problem facing the federal courts since *Erie* has been to determine which questions arising in diversity litigation are matters of state concern which should be answered by reference to state law and which questions are matters of federal concern which can be answered by reference to federal law. *Erie* and its progeny may be seen as an attempt to formulate a workable doctrine governing choice of law in diversity actions which would prevent impermissible federal court interference with state rules reflecting policy considerations lying within the realm of state law-making competence. Guaranty Trust Co. [of New York] v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079; Hanna v. Plumer, 380 U.S. 460, 474, 85 S.Ct. 1136, [14 L.Ed.2d 8] (concurring opinion of Mr. Justice Harlan).
".   .   .

"It is, of course, neither possible nor necessary for federal courts to be totally neutral in the adjudication of state-created rights. It is not possible simply because federal courts are not protean and are unable to transform themselves into exact replicas of their state counterparts. That state and federal judicial systems are not identic will inevitably mean that the choice of forum will have some effect upon the course of litigation. Some adoption of state court procedures by federal courts sitting in diversity may be feasible, but it may also be in conflict with fundamental interests of the federal courts in the conduct of their own business and the maintenance of the integrity of their own procedures, the legitimate interests of a federal forum, *qua* forum.

"Literal application of some of the language in Guaranty Trust Co. [of New York] v. York, *supra*, might appear to compel the conclusion that a federal court must apply state law in every case where failure to do so might make a difference in the outcome of the litigation. The language of that opinion, however, has been moderated. Now, in the choice between state and federal law in the dis-

position of procedural problems such as the one before us, we properly take account of federal interests and the effective functioning of the federal courts as a cohesive, relatively unitary, system for the administration of justice."

The above cited cases are not directly controlling on the question before this Court. However, the Court is of the opinion that these cases disclose a trend of authority away from the blind adherence to the "out-come determinative" test of Guaranty Trust and toward the application of federal law in the face of a conflicting state procedural rule, not intimately related to a state created right, where the application of federal law is supported by affirmative countervailing federal considerations. In this respect the trend of authority is consistent with the modern and progressive view on conflicts of law which mandates the application of the law of the forum which has the most significant relationship to the issue before the Court. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Auten v. Auten, 308 N.Y. 155, 124 N.E. 2d 99 (1954); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966).

■■ Where a state-federal conflict pertains to issues concerning the standard of conduct for persons within a state's jurisdiction and the measure of damages in state created wrongful death actions, the state's interest in promulgating rules of conduct and in defining the extent of recovery on state created causes of actions is overriding and requires the application of state statutory or decisional law to these issues. Where, as here, the choice of law question pertains to the res judicata or preclusive effect of a judgment rendered in one federal district court in a diversity action upon an action involving an identical issue filed in another federal district court entirely different considerations are involved. The doctrine of res judicata or issue preclusion is founded upon the policy of terminating needless and endless litigation, avoiding inconsistent judicial decisions on the same set of facts and effectively allocating judicial time. These policy considerations are directly and intimately related to an over-riding federal interest in the effective administration of justice in the federal court system. Furthermore, the issue of the preclusive effect of a federal district court judgment upon an action filed in another district court directly bears upon the internal relationship between components of a single federal judicial system. In order to guarantee the effective functioning of the various federal district courts as components of a unitary system for the administration of justice, the force and effect of a judgment rendered in a federal district court upon an action pending in other federal district courts should properly be determined under federal law. The Court, therefore, concludes that federal law should govern the preclusion issue raised in the pending motion.

The remaining question to be answered is whether federal law would permit the judgment in the Downey case which exonerated the Tann Company from responsibility for the mid-air disaster to operate as a bar to the relitigation of the issue of Tann Company's responsibility by plaintiff Humphreys who was not a party to the Downey case.

As it originally developed the doctrine of collateral estoppel or issue preclusion barred the parties to a prior action or their privies from relitigating in a subsequent action an issue actually litigated in a prior action in which a final judgment was rendered. 46 Am.Jur.2d Judgments § 415, pp. 415–416. The application of this doctrine was severely restricted by the requirement of mutuality of estoppel. Under the mutuality rule no person is bound in a subsequent suit by a judgment rendered in a prior suit where the adverse party seeking to take the benefit of the prior judgment would not have been prejudiced had the prior action been determined the other way.

Recent years have seen the steady erosion of the mutuality rule in both the

state and federal courts. The landmark case supporting the abandonment of the strict requirement of mutuality of estoppel is Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942). The so-called Bernhard Doctrine as stated by the California Court is as follows:

" 'The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided [citing cases]. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. Ibid. There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

" 'No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. See 7 Bentham's Works, Bowring's Ed., 171. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. [Citing cases] The courts of most jurisdictions have in effect accomplished the same results by recognizing a broad exception to the requirements of mutuality and privity, namely, that they are not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts. [Citing cases]. The cases justify this exception on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries.

" 'In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' "

Subsequent to the Bernhard case a substantial number of federal courts have abandoned the requirement of mutuality and permitted the utilization of the doctrine of collateral estoppel by a stranger to a prior action against a party who has actually litigated an issue in the prior action. People of State of Colorado for Use of Fifield v. Ohio Casualty Ins., Co., 232 F.2d 474 (C.A.10 1956); Davis v. McKinnon & Mooney, 266 F.2d 870 (C.A.6 1959); Gibson v. United States, 211 F.2d 425 (C.A.3 1954); Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (C. A.2 1964).

The Bernhard Doctrine abandoning the requirement of strict mutuality is especially applicable to protracted multiple litigation arising from common disasters where the factual and legal issues concerning the liability of defendants are identical. Thus in the case of United States v. United Air Lines, Inc., 216 F.Supp. 709 (D.Nev.1962), aff'd sub nom. United Air Lines, Inc. v. Wiener, 335 F.2d 379 (C.A.9 1964), cert. dismissed 379 U.S. 951, 85 S.Ct. 452, 13 L. Ed.2d 549 (1964) the district court held that a defendant airline company which had thoroughly litigated, in cases brought in the Southern District of California by heirs of passengers, the issue of liability of the airline for the death of passengers in a collision between a passenger plane and a military aircraft was estopped to deny liability to heirs who brought suit in Washington and Nevada arising out of the same air disaster. Accord State of Maryland for Use of Gliedman v. Capital Airlines, Inc.

267 F.Supp. 298 (D.Md.1967). In New York a court has adopted this view holding that a defendant airline would be estopped from denying liability where it had already been adjudged liable by a Texas Court applying Kentucky law. Hart v. American Airlines, Inc., 61 Misc.2d 41, 304 N.Y.S.2d 810.

This Court expressly approves of the holdings in United States v. United Air Lines, Inc. supra, State of Maryland for Use of Gliedman v. Capital Airlines, Inc. supra and Hart v. American Airlines, Inc., supra. Had the jury in the Downey case rendered judgment against the Tann Company this Court on the basis of the judgment in the Downey case would have sustained motions for summary judgment on the issue of liability in favor of plaintiffs in the outstanding passenger cases brought against Tann Company.

Turning to the facts of the present case it is clear that two of the essential elements of the Bernhard Doctrine have been satisfied. A final judgment on the merits has been rendered and the issue of whether the Tann Company pilot was guilty of any act of negligence constituting a proximate cause of the mid-air disaster has been actually litigated. The third essential requirement for the application of the doctrine of collateral estoppel however is lacking—that is—the plaintiff Humphreys against whom the doctrine is invoked has not personally litigated the issue of Tann Company's liability. Thus the Tann Company in its motion asks this Court to carry the Bernhard Doctrine one step further and apply the collateral estoppel doctrine against a stranger to the prior action.

Reasons which are not insubstantial have been advanced for the rule denying the application of collateral estoppel against a stranger. These reasons have been aptly summarized as follows:

"The rule denying the right to apply the doctrine of res judicata as against strangers to the prior action is based upon obvious principles of justice, fairness, and requirements of due process of law. The reason for the rule lies in the fact that a stranger to an action does not have the opportunity, vouchsafed to parties, to prove or ascertain the truth of the questions in issue, and the principle that no man's right should be prejudiced without an opportunity of defending it. Indeed, it is a fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court and an opportunity to be heard." 46 Am.Jur.2d Judgments § 519, page 671.

The constitutional requirement that each person be afforded his day in court is premised upon the underlying principle that fundamental fairness guaranteed by the due process clause of the Fifth and Fourteenth Amendments dictates that no person shall be deprived of a valuable right or claim without first being afforded the right to appear and be heard.

■ This Court does not believe that the maxim that each man must be given his day in court is so inexorably fixed that it must mandatorily apply where a careful evaluation of the record of pretrial and trial proceedings in the prior action discloses that the absent party was given full and complete opportunity to ascertain and develop all relevant facts and to frame the issues during discovery and the liability issue was adjudicated at a trial conducted in an atmosphere free from errors in substantive, evidentiary and procedural law or trial strategy which if avoided would have changed the result.

■ In the limited context of these multidistrict litigation cases the Court does not believe the principles of fundamental fairness guaranteed by due process of law are violated by the application of the doctrine of collateral estoppel against plaintiff Humphreys. The Humphreys case was transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated and consolidated pretrial proceedings. Coordinated discovery was conducted at which

counsel for plaintiff Humphreys was given the opportunity to ascertain and develop all relevant facts concerning the cause of the mid-air collision. Under the coordinated discovery proceedings Humphreys' counsel received the added advantage of reaping the benefit of facts developed by other attorneys who specialize in this type of litigation. At subsequent pretrial conferences counsel for Humphreys had the opportunity to participate in the framing of issues for trial and in selecting the first case to be tried. At the trial itself all parties were represented by highly competent attorneys who can accurately be designated as specialists in aviation disaster litigation. All tenable claims of negligence on the part of Tann Company were presented not only by plaintiffs' counsel but by the equally competent counsel for Trans World Airlines who attempted to convince the jury that the sole proximate cause of the mid-air collision was the negligence of the Tann Company pilot. Well reasoned opening statements and closing arguments were presented to the jury. The Court deems it extremely significant that counsel for plaintiff Humphreys, either in his brief or during oral argument, did not assert that learned counsel for plaintiff Downey failed to introduce all relevant evidence, neglected to present all claims of negligence on the part of Tann or otherwise made errors of commission or omission with respect to substantive, procedural or evidentiary law or trial strategy which resulted or contributed to the verdict in favor of Tann Company. No errors on the part of this Court in the admission of evidence or the charge to the jury have been raised. Having had the advantage of presiding at the trial of the Downey case, this Court can truly say that the Downey case was one of the most skillfully tried cases this Court has had the pleasure of adjudicating.

Finally, this is not the type of case where there is an appreciable danger that the jury verdict in favor of the Tann Company was a compromise motivated by sympathy. The uncontradicted evidence discloses that the deceased passenger Edward Downey was an outstanding individual in terms of his business endeavors and private life. The decedent was a graduate engineer who was selected by his employer for further advancement. The decedent was active in church and civic affairs and at the time of his death left a wife and three minor children. It was obvious that plaintiff's counsel who represented the heirs of other deceased passengers was litigating his most favorable case in an attempt to test the liability and monetary responsibility of both Trans World Airlines and the Tann Company.

Upon considering all these factors the Court concludes that no principle of fundamental fairness inherent in the concept of due process will be offended by the application of the doctrine against plaintiff Humphreys to bar the relitigation of the issue of the Tann Company's liability for the mid-air disaster. In this Court's opinion unfairness will result and the effective administration of justice will be retarded if plaintiff Humphreys is permitted to relitigate an issue which has been fully and fairly adjudicated.

In the context of these multidistrict cases, permitting plaintiff Humphreys to relitigate the issue of Tann Company's liability would sanction a fruitless act which would not effect substantial justice and would be contrary to orderly and efficient judicial administration and repugnant to the purposes of the Multidistrict Litigation Act.

In reaching this conclusion the Court has assumed that federal not Ohio law governed the issue preclusion question raised herein. It must be recognized that the Ohio Supreme Court has declined to abandon the strict requirements of mutuality and privity in the application of the doctrine of res judicata or collateral estoppel. First National Bank of Cincinnati v. Berkshire Life Ins. Co., 176 Ohio St. 395, 199 N.E.2d 863; Whitehead v. General Telephone Co., 20 Ohio St.2d 108, 254 N.E.2d 10. In the Whitehead case the Ohio Supreme

Court declined to abandon the strict requirement of privity for the reason a contrary rule "could create grave problems in establishing the adequacy of a nonparty's representation in the prior suit and that the case at bar [was] not one which should result in a departure from present Ohio law."

In this action we are dealing with the question of the res judicata or collateral estoppel effect of a prior federal court judgment in the context of federal common disaster multidistrict litigation. The Ohio Supreme Court has never considered this question and it is unlikely that this issue in the context of federal multidistrict litigation will reach the Ohio Supreme Court.[1] Even assuming that Ohio law applies under the facts of the present case the Court does not find that it is bound by the Ohio cases. Furthermore, this Court believes that were the Ohio Supreme Court to consider the special facts of the present case, wherein it is clear that the issue of Tann Company's liability was truly and fairly tried by expert plaintiff's counsel, the Ohio Supreme Court would regard this action as a proper case for the abandonment of the strict requirements of privity and mutuality in the application of the doctrine of res judicata or collateral estoppel.

The Court realizes that this decision does not conform to the weight of authority and appreciates that there is room for reasonable divergence of opinion as to the validity of the result reached herein. However, in view of the great increase in the number of civil actions commenced in the federal district courts in recent years, the Court believes that the federal trial courts should not hesitate to adopt new approaches designed to terminate needless and futile litigation where identical liability issues have been fairly and truly tried in a prior action. Furthermore, the Court believes that this is a proper case in which to test the power of a transferee court in common disaster multidistrict litigation to bar relitigation in subsequent common disaster actions of identical liability issues which have been actually litigated in a prior action arising from the same incident.

Accordingly, the motion of the Tann Company for summary judgment in its favor in the case of Humphreys v. The Tann Company, Civil Action No. 3834(ML)(F) hereby is sustained and this action hereby is dismissed.

1. It should be noted that in preparing proposed by-laws for the Ohio State-Federal Judicial Council this Court learned that the Delaware State-Federal Judicial Council has unanimously approved in principle the adoption of constitutional or statutory authority for the Supreme Court of Delaware to receive certified questions of Delaware law from the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit under such circumstances as shall be set forth in the rules of these courts.

The adoption of a procedure for the certification of questions of Ohio law to the Supreme Court of Ohio from the United States District Courts for the Northern and Southern Districts of Ohio and the United States Court of Appeals for the Sixth Circuit would seem to be a useful step toward eliminating uncertainty as to the requirements of Ohio law in diversity cases.