Lawrence **REIDINGER, Jr., Admr.,**
**D.B.N., et al., Plaintiff-Appellee,**

v.

**TRANS WORLD AIRLINES, INC., et al.,**
**Defendants-Appellants.**

**J. Bruce MILLER, Admr. of the Estates**
**of Jerry L. Rhodes, et al., Plaintiffs-**
**Appellants,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

The **CENTRAL TRUST COMPANY, Extr.**
**of the Estates of Milton P. Link, et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**Nos. 71-1727 to 71-1735.**

United States Court of Appeals,
Sixth Circuit.

July 6, 1972.

No. 71-1727:

John J. O'Hara, O'Hara, Ruberg &
Cetrulo, Covington, Ky., Daniel J.

O'Neill, Chadbourne, Parke, Whiteside &
Wolff, New York City, on brief, for de-
fendants-appellants.

James Q. Doran, Cohen, Todd, Kite &
Spiegel, Cincinnati, Ohio, Marshall C.
Hunt, Jr., Cincinnati, Ohio, on brief, for
plaintiff-appellee.

Nos. 71-1728 to 71-1732:

Thomas C. Carroll, Louisville, Ky., for
plaintiffs-appellants.

Leonard Schaitman, Department of
Justice, Washington, D. C., Kathryn H.
Baldwin, Department of Justice, Wash-
ington, D. C., L. Patrick Gray, III, Asst.
Atty. Gen., Eugene E. Siler, Jr., U. S.
Atty., on brief, for defendant-appellee.

Nos. 71-1733 to 71-1735:

John W. Beatty, Cincinnati, Ohio, Wil-
liam L. Blum, Cincinnati, Ohio, on brief,
for plaintiffs-appellants.

Leonard Schaitman, Department of
Justice, Washington, D. C., Kathryn H.
Baldwin, Department of Justice, Wash-
ington, D. C., L. Patrick Gray, III, Asst.
Atty. Gen., Eugene E. Siler, Jr., U. S.
Atty., on brief, for defendant-appellee.

Before MILLER and KENT, Circuit
Judges, and FEIKENS, District Judge.*

FEIKENS, District Judge.

On November 20, 1967, a Trans World
Airlines Convair 880 jet aircraft crashed
while on final approach to a landing at
Greater Cincinnati Airport in Kentucky.
Sixty-five passengers and five crew
members died. Ten passengers and two
crew members survived.

This crash was the subject matter of a
number of suits commenced in various
United States District Courts. The Judi-
cial Panel for Multi-District Litigation,
in an opinion and order, transferred all
these actions to the United States Dis-
trict Court for the Eastern District of
Kentucky for pretrial proceedings and
discovery. (Title 28 U.S.C. § 1407).
The discovery phase produced volumi-
nous interrogatories and answers, exten-
sive discovery of documents, many ad-

* The Honorable John Feikens, United
States District Judge for the Eastern

District of Michigan, sitting by desig-
nation.

missions of fact, and the taking of seventy-four depositions from lay and expert witnesses.

Case No. 71–1727 involves suits by representatives of the estates of passengers against Trans World Airlines. Some passenger representatives additionally sued the United States (actions against the air traffic controllers at the Greater Cincinnati Airport) and some also sued General Dynamics Corporation (the manufacturer of the Convair) and Kollsman Instrument Company (the supplier of the aircraft's instruments).

Three suits, numbered 71–1733, 71–1734, and 71–1735, on behalf of two deceased passengers (hereinafter referred to as the Link plaintiffs) were continued against the United States only.[1]

Additionally, there are suits on behalf of five crew members (numbered 71–1728 through 71–1732) against the United States.

Motions for summary judgment were filed by the passenger estates against Trans World Airlines on the issue of liability only; by the United States against the passenger estates and crew suits; by General Dynamics against the passenger estates suits and Trans World Airlines' cross claims and by Kollsman, third-party defendant, against the passenger estates suits and General Dynamics' third-party complaint.

The United States District Court for the Eastern District of Kentucky granted all motions.[2]

Trans World Airlines, the crew representatives, and the Link plaintiffs have appealed. Trans World Airlines was granted an interlocutory appeal, and all cases were consolidated for the purpose of this appeal. No appeal was taken from orders granting summary judgment in favor of General Dynamics and Kollsman.

All appellants contend that there are genuine issues of material fact (citing Federal Rule of Civil Procedure 56(c)) and that the grant of summary judgment was erroneous.

The United States District Court had earlier met this question head on. That court said: "From the various briefs and documents before the court it is clear that there is no genuine issue as to the facts material to the motions for summary judgment." [3]

Thus, the overriding question on appeal is: Can these tort cases be disposed of by summary judgment?

Trans World Airlines Flight No. 128 was regularly scheduled between Los Angeles and Boston, with stops enroute at Cincinnati and Pittsburgh. On November 20, 1967, it departed Los Angeles at 2:37 p. m. (PST) and flew across the country under control of various aircraft traffic control facilities. At 8:47 p. m. (EST), approximately thirty-five miles northwest of the Greater Cincinnati Airport, the aircraft came under the Cincinnati approach control. It was cleared for descent and an instrument landing system (ILS)[4] approach to run-

---

1. Two deceased passengers, Milton P. Link and Elizabeth C. Link, are represented in three cases by the Central Trust Company, Executor (Nos. 71–1733–35). Originally, these cases named other additional defendants, but as to them, the cases were terminated by settlement.

2. Trans World Airlines has contended that transfer by the Panel for Multi-District Litigation under Section 1407 (28 U.S.C. § 1407) does not include the power to grant summary judgment. Section 1407 states that civil actions "may be transferred . . . for coordination or consolidated pretrial proceedings."

   The legislative history indicates that the power to conduct "pre-trial proceed-

ings" includes the power to consider motions for summary judgment: "Under the Federal rules the transferee district could have authority to render summary judgment . . . ." 1968 U.S.Code Congressional and Administrative News, p. 1900.

   It is clear that the District Judge had the power to hear and decide these motions.

3. 329 F.Supp. 487, 488 (E.D.Ky.1971).

4. The Instrument Landing System (ILS) is a guidance system of navigational aids designed to assist the aircraft in keeping aligned with the runway, and at a proper altitude. Federal air regulations allow run-

way 18. This runway runs generally from north to south.

The aircraft crashed approximately 10,000 feet short of the approach to runway 18 at an elevation of 870 feet above sea level (which was about 15 feet below the elevation of runway 18).

The critical areas in contention on appeal concern at least five issues:

(1) Landing and weather information given to the crew;

(2) Whether runway 18 (a north approach) or runway 36 (a south approach) should have been used by the aircraft;

(3) The conduct of the crew;

(4) Whether or not instruments on the aircraft functioned correctly; and

(5) Proximate cause.

Findings of fact as to each of these questions and the interplay of these findings on conclusions as to negligence, breach of duty, and proximate cause are vital to the rights and liabilities of the parties.

It is at once apparent that the passenger representatives (other than the Link passenger representatives who have suits only against the United States) and the United States are satisfied with the rulings of the lower court and see no controversy in these facts. The crew member representatives and Trans World Airlines, as well as the Link passenger representatives, contend that there are many disputed questions of material fact.

The majority of passenger representatives contend that the facts show that only Trans World Airlines was negligent and that that negligence was the *sole* proximate cause of their decedents' deaths. The Link passenger representatives who sued the United States urge that the facts show that the air controllers were negligent and that their negligence was *a* proximate cause of their decedents' deaths. The crew members' representatives urge that the air controllers were negligent and that their negligence was the *sole* proximate cause of the crash; and finally, the United States claims that the facts show that the crew was negligent and that their negligence was the *sole* proximate cause of the crash.

Thus, we are required to scrutinize the facts as to weather and landing information, the use of a particular runway, crew conduct, and instrument function to determine whether there are genuine issues as to any material facts.

LANDING AND WEATHER INFORMATION

With regard to this issue, the crew representatives offer these facts: that the air controllers did not give altimeter information to the crew; that the controllers did not give the crew correct advice as to the weather; that the controllers did not establish reliable visibility check points; that while visibility was five miles at 8:40 p. m., it dropped to 1½ miles at 8:49 p. m. and was rapidly deteriorating because of heavy snow showers immediately prior to the crash and that this latter information was not given to the crew; that at 8:52 p. m. the local air controller questioned the approach controller whether flight 128

---

landings with less than all components of the ILS working when certain minimum visual references are available.

A complete instrument landing system consists of outer and middle markers, a localizer, guide slope, and high-intensity approach lights.

The outer and middle markers are ground devices which electronically activate cockpit instruments.

The outer marker is located four miles and the middle marker one-half mile from the end of the runway. As each point is passed, the cockpit instrument indicates this point to the pilot.

The localizer emits a radio signal which indicates to the pilot whether the aircraft is in proper alignment with the runway.

The glide slope is similar to the localizer except that the signal which it emits indicates whether the pilot is maintaining a proper slope of descent, enabling him to determine if the aircraft is too high or too low.

should land on runway 18 or runway 36 which, the crew representatives contend, shows air controller impropriety as to landing recommendations. Trans World Airlines and the Link passenger representatives join in these offers of proof.

In contrast, the United States relies upon the facts found by the lower court: that the Indianapolis air controllers gave flight 128 an altimeter reading at approximately 8:30 p. m.; that the Cincinnati air controllers gave a departing American Airlines aircraft an altimeter reading as Trans World Airlines flight 128 approached the Cincinnati airport; that the flight recorder on the aircraft which was recovered after the crash noted a crew voice saying: "Altimeter set and cross checked," which tended to show that the crew had the required altimeter reading; and that the recorded official weather data indicated that visibility was in fact 1½ miles with light snow and was given to the crew.

## WHETHER RUNWAY 18 OR RUNWAY 36 SHOULD HAVE BEEN USED

Trans World Airlines and the crew representatives offer to show the following facts: The instrument landing system (ILS) at Greater Cincinnati Airport on November 20, 1967, for runway 18 (navigational aids which were working) consisted of an outer marker and locator and an ILS localizer. On runway 36, the instrument landing system which was working consisted of an outer marker, a middle marker, high-intensity approach lights, and an ILS localizer. Neither runway had a glide slope. The crew member representatives and Trans World Airlines contend that the failure on the part of the air controllers to give this data to the crew and to recommend a runway 36 landing is some evidence of their negligence. They are joined in that contention by some of the plaintiff passenger representatives. Trans World Airlines additionally offers to prove that the air controllers did not reroute flight 128 to runway 36, and it contends this was negligent conduct; that this

claimed failure meant that the crew did not have the advantage of the high-intensity approach lights and the middle marker.

The United States contends in opposition that the crew was experienced; that the aircraft's captain had flown into the Greater Cincinnati Airport numerous times and that only he could make the ultimate choice of runway. It also contends that the crew was notified that runway 18 did not have an operative glide slope.

## CREW CONDUCT

The passenger representatives (other than the Link passengers) contend that the facts show only negligence on the part of the crew, viz: that the aircraft crashed at fifteen feet below the elevation of runway 18, and that there was no crew coordination procedure with respect to altitude; that the first officer did not call out the missed approach procedure, air speed, or sink rate, and that he did not call out when the aircraft reached 500 feet altitude, contrary to established procedure; that he did not call out every 100 feet of descent below the 500-foot level, nor did he call out "no flags" meaning that all instruments were operating correctly; and that he did not call out "no runway" before the crash.

In opposition to these facts, Trans World Airlines offers to prove that the crew did not receive proper information from its air data instrumentation and that from the flight recorder transcript, it was apparent that the crew was not aware of any improper approach.

To controvert this, the United States again offers to prove that the crew was experienced, knew the airport, and that the captain had flown into Greater Cincinnati Airport numerous times; that the crew knew the altitude, and that from data recovered after the crash it appeared that the aircraft descended at an excessive rate—at the rate of 3,000 feet per minute for a five-second period and at the rate of 1,800 feet per minute until five seconds before impact. The

United States contends that a normal descent rate would have been 700 to 800 feet per second. It points to the fact, too, that the aircraft crashed 10,000 feet short of the runway.

## WHETHER OR NOT THE AIRCRAFT INSTRUMENTS FUNCTIONED CORRECTLY

Trans World Airlines offers proof to support its contention that water and snow were ingested into the static ports of the aircraft, possibly causing the malfunction of instruments, which might have resulted in a misindication of data. It claims that the facts show that the crew did not receive proper information from its air instruments. In opposition to these contentions, passenger representatives claim that the facts show that the flight recorder indicated the crew made no comment as to instrument malfunction or aircraft altitude; that examination of part of the air instrumentation system recovered from the wreckage intact reveals no pre-impact malfunction; and that there was no evidence whatever of water ingestion into the static ports.

## CONCLUSION

Each of these offers of proof has a material bearing on questions of proximate cause. Thus, Trans World Airlines contends that a jury might conclude that the air controllers' negligence (for example, failure to give altimeter information, accurate weather data, accurate visibility data, and failure to recommend a better runway to use in view of deteriorating weather conditions), if it is so found, might be determined to be the *sole* cause of the crash.

Trans World Airlines also wants an opportunity to present these facts so that a jury might find that negligence on the part of the air controllers was a proximate cause of the crash even though a finding is also made that the Trans World Airlines' crew was also negligent and that such negligence was also a proximate cause of the crash.

The crew representatives contend that they should have an opportunity to prove facts to the trier for determination as to whether the air controllers' conduct was negligent and whether that negligence was the sole cause of the crash.

The Link passengers contend that they, too, have a right to present facts to show that the air controllers were negligent and that their negligence was *a* proximate cause of the crash.

From all this, it is abundantly clear that there are genuine issues of material fact and of proximate cause.

It is well settled that it is the rare negligence case that can be resolved by summary judgment. Aetna Insurance Co. v. Cooper Wells & Co., 234 F.2d 342, 344 (6th Cir. 1956). In Rogers v. Peabody Coal Company, 342 F.2d 749 (6th Cir. 1965), we said:

"Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is and no genuine issue of fact remains for trial. The purpose of the rule is not to cut litigants off from the right to trial by jury if they really have issues to try. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620 [627], 64 S.Ct. 724, 88 L.Ed. 967 (1944).

"In the instant case, plaintiff seeks recovery based upon defendant's alleged negligence. This Court has previously noted that there is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner [citations omitted]. It is only in the exceptional negligence case that the rule should be invoked. [citation omitted] And even where the trial judge reasonably may surmise that plaintiff is unlikely to prevail upon a trial, that is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them [citations omitted]." 342 F.2d at 751.

There is here the denial of the opportunity afforded by our adversary system

# 1022

to put opposing factual contentions against each other to determine truth. To say as a matter of law that this crash occurred only because of crew negligence overlooks the potential acceptability of other contentions. This is the function of the trial. It is there the necessary sifting out of facts occurs.

But this is not to say that the great contribution made by the Honorable Mac Swinford in these complex cases is not recognized. The court, with the able assistance of counsel in a consolidated proceeding, fully carried out the formidable tasks of discovery and pretrial preparation. Even though these cases need now be tried, the consolidated preparation of these cases evidences the wisdom of the multi-district litigation panel approach and the industry of court and counsel.

Summary judgments in favor of the passenger estates against Trans World Airlines, in favor of the United States against the Link passenger representatives and in favor of the United States against the crew representatives and crew member are reversed. These cases are remanded for proceedings in accordance with this opinion.