George H. HUMPHREYS, Administrator of the Estate of John S. Humphreys, Deceased, and George H. Humphreys, Individually, Plaintiff-Appellant,

v.

Herman TANN et al., Defendants-Appellees.

No. 72–2225.

United States Court of Appeals, Sixth Circuit.

Submitted on briefs Oct. 2, 1973.

Decided Nov. 21, 1973.

Theodore E. Wolcott, San Francisco, Cal., for plaintiff-appellant.

Walter E. Rutherford, Haight, Gardner, Poor & Havens, New York City, H. Thomas Haacke, Jr., Dayton, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

John S. Humphreys, a resident of New York, was killed on March 9, 1967 in a mid-air collision between the Trans World Airlines (TWA) jetliner on which he was a passenger and a smaller Beech Baron aircraft owned by The Tann Company (Tann), a partnership. The collision occurred near Urbana, Ohio as the TWA plane was preparing to land at the Dayton, Ohio airport. No occupant of either plane survived. Numerous law suits were filed in various state and federal courts. The personal representative of John S. Humphreys sued Tann in the U.S. District Court for the Eastern District of Michigan, Southern Division, the place of residence of the partners and the place where the partnership was established and carried on its business. The Tann Corporation, a Michigan corporation, was also made a defendant. The complaint charged Tann with a number of acts of negligence and sought damages "under the common law and the statutes of the State of Ohio." Jurisdiction of the court was based on diversity of citizenship.

By an order dated March 23, 1970, the Judicial Panel on Multidistrict Litigation directed that a number of the actions arising out of the air crash be "transferred to the Southern District of Ohio, Dayton Division, . . . for coordinated or consolidated pretrial proceedings with the related actions now pending in that court." In re Air Crash Disaster Near Dayton, Ohio, 310 F.Supp. 798 (1970). The action of Humphreys' representative against Tann was not included in the March 23 order, but was transferred as a tag-along case by an order of July 10, 1970. Thereafter counsel

for the Humphreys estate participated in pretrial discovery and conferences among the many attorneys involved in the various actions. Two pretrial conferences were held by the district judge. At the pretrial conference held on December 15, 1970, one case, Downey v. TWA and Tann, was set for trial on March 22, 1971. This case had been filed originally in the Southern District of Ohio. None of the transferred cases was consolidated with *Downey,* nor was there any agreement that it would serve as a test case.

The trial of the Downey case resulted in a verdict for the plaintiff against TWA only. Judgment was entered on the verdict dismissing the actions against Tann by the plaintiff and by TWA on its cross-claim. Thereafter Tann filed a motion for summary judgment in the pending case of Humphreys v. Tann on the ground, "the plaintiffs in the remaining wrongful death actions against Tann are collaterally estopped from proving that the accident in question resulted from any negligence on the part of the Tann Company . . . ." On September 29, 1972 the district court entered an order granting Tann's motion for summary judgment and dismissing the action. In re Air Crash Disaster Near Dayton, Ohio, 350 F.Supp. 757 (S. D.Ohio 1972).

On appeal it is first contended that the District Court for the Southern District of Ohio, as transferee court under an order of the Judicial Panel on Multidistrict Litigation, did not have the authority or power to grant summary judgment. The appellant maintains that his case was transferred from the court in Michigan to one in Ohio for the limited purpose of coordinated or consolidated pretrial proceedings, and that when these proceedings were completed the transferee court lost jurisdiction over the transferred case. This argument seeks to put too narrow a construction on the term, "pretrial proceedings." While discovery by deposition, interrogatories and requests for admissions is a part of pretrial proceedings in the typi-

cal case, such proceedings are not limited to these activities. Various motions may properly be made as part of pretrial proceedings, including motions for summary judgment. The statute which permits the transfer of a case in multidistrict litigation provides for the remand of the case to the district from which it was transferred, at or before conclusion of pretrial proceedings, "unless it shall have been previously terminated." 28 U.S.C. § 1407. The termination may result from a voluntary dismissal or from action of the court. We adhere to our opinion in Reidinger v. Trans World Airlines, Inc., 463 F.2d 1017 (6th Cir. 1972), that the judge of a transferee court does have the power to hear and decide motions for summary judgment.

Appellant next contends that the district court improperly applied the doctrine of collateral estoppel in concluding that Tann was entitled to summary judgment. It is conceded that the *Humphreys* case was not consolidated with the *Downey* case and that the issue of Tann's liability to the Humphreys estate was not submitted to the jury which found in favor of Tann on the Downey claims. It is argued that since the plaintiff in the transferred *Humphreys* case was not a party to the action between Downey and Tann it would be a denial of due process of law to deny him his day in court on the basis of the outcome of that case. Thus the question is narrowed to whether there is a requirement of mutuality of parties for application of the doctrine of collateral estoppel.

In his Memorandum Opinion, the district judge stressed the fact that the motion was under consideration in the setting of multidistrict litigation and involved the effect of a prior federal court judgment on pending actions arising out of the same common disaster. In this context he concluded that federal law was controlling and that it permitted the application of collateral estoppel or preclusion to prevent relitigation of "an issue which has been fully and fairly adjudicated." The district judge recognized that the courts of Ohio require mutuality of parties for the application of collateral estoppel, but held that there was "an over-riding federal interest in the effective administration of justice in the federal court system."

While it is clear that Ohio requires mutuality of parties for application of collateral estoppel, Whitehead v. General Telephone Co., 20 Ohio St.2d 108, 116, 254 N.E.2d 10 (1969), it is not clear that there is a body of federal law which holds that mutuality is not required. The brief of the appellee, while arguing persuasively for application of federal rules, fails to establish the existence of such a body of law by authoritative citations. Much is made of the fact that Congress has enacted pervasive laws concerned with the utilization and control of the national airspace. It is also pointed out that the government was a defendant under the Federal Tort Claims Act in many of the passenger suits arising out of the Dayton collision. Furthermore, the very nature of airplane crashes involving scheduled passenger flights leads to numerous separate actions in different courts. Appellee asserts that when these actions are brought together for coordinated and consolidated pretrial proceedings under the Multidistrict Litigation Act, an orderly administration of the federal judicial system requires that federal law apply to all pretrial rulings. Unless there exists a federal rule of collateral estoppel which is different from that of Ohio, however, it is not necessary to decide which law controls.

The first significant judicial move away from the res judicata requirement of strict mutuality of parties occurred in Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942). The California Supreme Court, speaking through Justice Traynor, stated the issue and its determination as follows:

> The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria

for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. Coca Cola Co. v. Pepsi-Cola Co., supra [6 W.W.Harr. 124, 36 Del. 124, 172 A. 260]. See cases cited in 24 Am. & Eng.Encyc., 2d Ed., 731; 15 Cinn.L. Rev. 349, 351; 82 Pa.L.Rev. 871, 872. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. *Ibid.* There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. See 7 Bentham's Works, Bowring's Ed., 171. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. Coca Cola Co. v. Pepsi-Cola Co., supra; Liberty Mutual Ins. Co. v. George Colon & Co., 260 N.Y. 305, 183 N.E. 506; Atkinson v. White, 60 Me. 396; Eagle, etc. Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490; Jenkins v. Atlantic Coast Line R. Co., 89 S.C. 408, 71 S.E. 1010; United States v. Wexler, D.C., 8 F.2d 880. See Good Health Dairy Products Corp. of Rochester v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401. The commentators are almost unanimously in accord. 35 Yale L.J. 607; 9 Va.L.Reg.(N.S.) 241; 29 Ill.L.Rev. 93; 18 N.Y.U.L.Q. R. 565, 570; 12 Corn.L.Q. 92. The courts of most jurisdictions have in effect accomplished the same result by recognizing a broad exception to the requirements of mutuality and privity,

namely, that they are not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts. See cases cited in 35 Yale L.J. 607, 610; 9 Va.L.Reg.(N.S.) 241, 245–247; 29 Ill.L.Rev. 93, 94; 18 N.Y.U.L.Q.R. 565, 566, 567; 34 C.J. 988, 989. * * * The cases justify this exception on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries. 122 P.2d at 894.

The *Bernhard* opinion speaks of res judicata or "claim preclusion." This court applied the rationale of *Bernhard* to collateral estoppel or "issue preclusion" in Davis v. McKinnon & Mooney, 266 F.2d 870 (6th Cir. 1959). There a plaintiff who fully litigated an issue against one defendant and lost was precluded from relitigating the same issue against a different defendant. In Mackris v. Murray, 397 F.2d 74 (6th Cir. 1968), this court applied Michigan law to a case in which the driver of an automobile owned by his employer was killed in a collision with a third party. The employer-owner of the deceased driver's car obtained a judgment for property damages against the other driver. The estate of the deceased driver then sued the other driver and was granted summary judgment in the district court on the ground of collateral estoppel. This court reversed, discussing in detail the difference between the defensive use of collateral estoppel and its affirmative use. The same distinction between defensive and affirmative use of estoppel was noted by the Supreme Court of the United States in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), though it was not the basis of the decision.

In Zdanok v. Glidden Company, 327 F.2d 944 (2d Cir. 1964), offensive use of collateral estoppel permitted a stranger

to the previous litigation to recover in a subsequent action against the unsuccessful defendant in the earlier case. While treating the "offensive-defensive" distinction as a rule of thumb rather than a settled principle of law, the opinion points out that the case before it concerned a contract rather than factual questions of negligence, and prescribes conditions where abandonment of the mutuality requirement is proper.

In his Memorandum Opinion the district judge expressly adopted the holding in United States v. United Air Lines, Inc., 216 F.Supp. 709 (D.Nev.1962), aff'd sub nom., United Airlines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), cert. denied, 379 U.S. 951, 85 S.Ct. 452, 13 L. Ed.2d 549 (1964). That case arose out of a collision between a scheduled airliner and an Air Force plane on a training mission. Actions were filed in the United States District Court for the Southern District of California for the death of 24 passengers in the airliner and were consolidated for trial. The jury verdict held United Air Lines, Inc. liable for the death of its passengers. Thereafter, the District Court for Nevada granted summary judgment against United Air Lines in favor of the representatives of seven passengers whose cases had not been consolidated with the original 24 in the Southern District of California. In its opinion the district court stated:

> While it is true that the general rule requires that there be identity of parties to invoke the doctrine of *res judicata*, nevertheless, the Courts, increasingly so in the last 20 years, have not adhered to that doctrine, and have held that no constitutional right is violated where *the thing to be litigated was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it.*

The rule of non-mutuality is not a general one but a limited one to be determined from the facts and circumstances in each case whether or not it should be applied. 216 F.Supp. 709, 725–726.

Appellees have cited Antonioli v. Lehigh Coal & Navigation Co., 451 F.2d 1171 (3rd Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972), as a case "wherein parties to the second action who had not been parties to the prior action were barred from relitigating identical issues." This statement is not supported by the opinion, which holds that there was a substantial identity of parties in the two actions and that the same parties complained of substantially the same wrong. The case was decided on principles of res judicata, with no issue of mutuality of parties being considered. The only case noted by appellees, or discovered through independent research, in which a previous judgment was held to estop a plaintiff who was not a party to the previous action is Cauefield v. Fidelity & Casualty Company of New York, 378 F.2d 876 (5th Cir.), cert. denied, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967). In that case the court applied Louisiana law and concluded, ". . . that presented with the unusual facts of the case before us, the Louisiana courts also would find the appellants are estopped by the state court judgment in order to preclude relitigation of the desecration issue." 378 F.2d at 879. The facts in the case were most unusual in that the plaintiffs in the second action had testified in the trial of the first one to the very facts which would necessarily have been the basis of any recovery by them in the second trial. The jury in the first trial rejected this testimony and found for defendants. Both sets of plaintiffs were represented by the same attorneys; the second set of plaintiffs actively participated as witnesses in the first trial. Further, the Fifth Circuit's holding is an application of Louisiana law expressly confined to the unusual facts of that case. Its reasoning is not regarded as controlling in the present case.

The facts in the present case are quite different from those in *Cauefield, supra.* The administrator of the estate of John S. Humphreys chose an attorney to press his claim and the administratrix of the estate of Edward F. Downey chose a different attorney. They employed different strategies from the beginning. The Downey estate sued TWA and Tann jointly, whereas the Humphreys estate sued them separately in different jurisdictions. While the attorney for the Humphreys estate participated in coordinated pretrial activities under the multidistrict litigation order, the cases were never consolidated for trial and no agreement was made that the outcome of *Downey* would conclude the issues in other transferred cases. At the pretrial conference held by the transferee judge on December 15, 1970, the Downey case was set for trial. There was discussion of the procedure to be followed with respect to the other cases. The court indicated that it would try the cases which had originated in its jurisdiction and that the rest would be returned to the place where they were filed. When an attorney for the government stated that he did not expect to be bound by the testimony at the Downey trial, the court assured him that he would not be so bound since he was not a party to it. There is nothing in the proceedings to indicate an intention, or agreement, that persons not joined as plaintiffs in the Downey trial would be bound by its outcome.

■■■ While the doctrine of collateral estoppel permits a prior judgment to preclude relitigation of an issue previously determined on its merits, it may be applied *in favor of* a stranger to the first action, but only *against* a party to that action. This has been true from the beginning of the judicial development of the theory of collateral estoppel. In Bernhard v. Bank of America, *supra,* it was stated that three questions are determinative of the issue and that all must be answered affirmatively. The third question, "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" must be answered in the negative in this case. Humphreys' administrator is not bound, under this classic test of preclusion, by the verdict in the *Downey* case. Writing for a unanimous Supreme Court in Blonder-Tongue v. University of Illinois Foundation, *supra,* Justice White stated the rule as follows:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position. 402 U.S. at 329, 91 S.Ct. at 1443.

We share the concern of the district court for the crowded dockets of federal courts and the proper utilization of judicial time. However, we do not believe that these considerations can overcome the due process objection which was raised by the appellant as his first response to appellee's motion for summary judgment and which he has relied upon continuously.

The judgment of the district court is reversed. The cause is remanded to the district court for return to the United States District Court for the Eastern District of Michigan in accordance with the procedures of the Judicial Panel on Multidistrict Litigation. Costs will be taxed to the appellees.