## In re NISSAN MOTOR CORPORATION ANTITRUST LITIGATION.

### MDL No. 120.

United States District Court,
S. D. Florida.

March 29, 1979.

---

**166.** *See Wheeler v. The Durham City Board of Education, supra,* 585 F.2d at 623–24.

Granvil I. Specks, Specks & Goldberg, Chicago, Ill., for plaintiffs.

Frank Cicero, Jr., Kirkland & Ellis, Chicago, Ill., for Nissan Motor Corp.

## OPINION ON APPLICATION OF COLLATERAL ESTOPPEL DEFENSE

ATKINS, Chief Judge.

In July, 1972, P.D.Q. of Miami filed a private class action antitrust suit against Nissan Motor Corporation before this Court on behalf of all non-dealer Datsun purchas-

ers across the country. The suit alleged a nationwide conspiracy between Nissan-U.S.A. and Nissan-Japan to fix prices in violation of § 4 of the Clayton Act, 15 U.S.C. § 15.[1] Once this suit was filed, several others were filed throughout the United States. The cases were transferred by the Judicial Panel on Multidistrict Litigation to this Court for consolidated pretrial proceedings. *See In re Nissan Motor Corp. Antitrust Litigation*, 352 F.Supp. 960 (Jud.Pan. Mult.Lit.1973); *In re Nissan Motor Corp. Antitrust Litigation*, 385 F.Supp. 1253 (Jud. Pan.Mult.Lit.1974).

P.D.Q. was certified as a class representative by this Court, *P.D.Q. Inc. of Miami v. Nissan Motor Corp.*, 61 F.R.D. 372 (S.D.Fla. 1973), and thereafter this Court entered judgment on a jury verdict that no nationwide conspiracy had existed. The Court of Appeals affirmed, 577 F.2d 910 (5th Cir. 1978), but remanded the case for modification of the order awarding costs. Certiorari was denied by the Supreme Court this year. *In re Nissan Motor Corp. Antitrust Litigation*, —— U.S. ——, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

■ Defendant Nissan Motors has moved for summary judgment on plaintiffs' customer and territorial allegations and plaintiffs' conspiracy allegations. Plaintiffs have concurrently moved for an *in limine* ruling that this Court's entry of judgment against P.D.Q. has no collateral estoppel effect on the pending statewide actions. These three motions involve an analysis of the proper application of the collateral estoppel doctrine in the case at bar. This Court holds that collateral estoppel may not be invoked on due process grounds and, therefore, the motions by Nissan Motors are denied.

### I.

■ A fundamental principle of due process is that collateral estoppel may not

be asserted against one who was not a party in the previous action. The Supreme Court originally enunciated this principle in *Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 131, 32 S.Ct. 641, 644, 56 L.Ed. 1009 (1911):

"No judgment can be regarded as *res judicata* as to any matter where the rights in the subject-matter arise out of mutuality, and not by succession, unless the party could, as a matter of right, appear and defend, even though he may have knowledge of the suit. Otherwise he might be bound by a judgment as to which he had never had the opportunity to be heard, which is opposed to the first principles of justice."

■ The abrogation of the mutuality doctrine has not affected the validity of that principle. In *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court stated:

"Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications on the identical issue which stands directly against their position." 402 U.S. at 329, 91 S.Ct. at 1443.

Earlier this year, in *Parklane Hosiery Co., Inc. v. Shore*, —— U.S. ——, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Court reaffirmed this position, "[i]t is a violation of due process for a judgment to be binding on a litigant who is not a party or privy and therefore has never had an opportunity to be heard.". —— U.S. —— n.7, 99 S.Ct. at 649 r.7. This Court fully embraced this position in its recent opinion in *In re Yarn Processing Patent Validity Litigation*, MDL 82, (1979) 472 F.Supp. 174 wherein it was stated:

---

1. 15 U.S.C. § 15 reads as follows:

"Any person who shall be injured in his business or property by reason of anything forbidden under the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant

resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee."

"To allow this would enable these non-participants to reap the benefits of a favorable determination while escaping the binding effect of an unfavorable determination, because should Lex Tex prevail on the merits, due process considerations would preclude it from asserting collateral estoppel against these defendants in the subsequent action."

Nissan Motors asserts these due process requirements would not be violated in the application of collateral estoppel in the present action. It argues that the P.D.Q. plaintiffs were essentially in privity with remaining class plaintiffs in MDL 120. More specifically, it is alleged that (1) the complaints in the remaining actions are identical with P.D.Q.; (2) the plaintiffs' counsel closely coordinated and shared responsibility in the consolidated pretrial proceedings, including discovery and pretrial hearings; (3) joint motions were filed evincing common legal analysis, theories, and strategies; (4) the pretrial submissions show no material distinctions among any of the plaintiffs; (5) plaintiffs controlled the trial through joint pretrial submissions, which were conducted by a party with identical interests; (6) there was no deficiency in the proceedings or additional evidence of genuine substance to offer at any future trial; and (7) the precise legal issue central to all the plaintiffs' case was decided adversely against them in the P.D.Q. trial. Defendant cites some authority in the Fifth Circuit to support the proposition that these factors establish the plaintiffs have received "a full and fair opportunity to be heard." Significantly, Nissan also relies on the recent Supreme Court case of *Montana v. United States*, —— U.S. ——, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

## II.

When the issue of class certification was originally raised in the *P.D.Q.* case, this Court was faced with the question of whether a nationwide class would be appropriate. The Court stated that in view of the plaintiffs' reluctance to advance more than a few thousand dollars to finance the action, a nationwide class would be infeasible. The Court ordered the class to be limited to purchasers in New York County, New York, and Dade County, Florida. 61 F.R.D. at 381. In a subsequent order on May 28, 1976, the Court indicated that the class actions would be remanded to their original transferor forums for trial.[2] This order was later modified to provide that the *Scharf* action would also be sent back to the Southern District of New York for trial.[3]

This Court later denied a § 1404(a) motion by the plaintiffs in the *Lewis* and *Horowitz* cases,[4] for transfer to the Southern District of Florida. Throughout the entire length of these proceedings, the Court's rulings have indicated the necessity that the *P.D.Q.* case and the remainder of the actions be tried separately. The defendant, Nissan Motors, now raises the issue of whether under the circumstances, those non-participating plaintiffs may be bound by the *P.D.Q.* litigation because they, in effect, "controlled" the litigation through the P.D.Q. plaintiffs.

None of the cases cited by the defendant lead the Court to that conclusion. In *Montana v. United States*, —— U.S. ——, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), a contractor brought suit in state court contending that the gross receipt tax unconstitutionally discriminated against the Government and companies with which it dealt. Soon after that, the Government filed suit in the United States District Court of Montana. In holding that collateral estoppel should be applied in that case, the Supreme Court stated: "[t]hese interests are similarly implicated when non parties assume control over the litigation in which they have a

---

**2.** *Order Denying Motion to Decertify Class*, pp. 4–5.

**3.** *Scharf v. Nissan Motor Corporation*, No. 73–121–Civ–CA. *Order Following Pretrial Conference Held June 18, 1976*, entered June 28, 1976.

**4.** *Lewis v. Nissan Motor Corporation*, 75–2080–Civ–CA; *Horowitz v. Nissan Motor Corporation*, 75–2202–Civ–CA. *Order Following Pretrial Conference Held June 18, 1976*, entered June 28, 1976.

direct financial or proprietory interest, and then seek to redetermine issues previously resolved." The Court then listed the factors it found as evincing Government "control" of the litigation. The Government had stipulated that it:

(1) required the first lawsuit to be filed;

(2) reviewed and approved the complaint;

(3) paid the attorney's fees and costs;

(4) directed the appeal from the state district court to the Montana Supreme Court;

(5) appeared and submitted an amicus brief in that court;

(6) directed the filing of a Notice of Appeal to the Supreme Court of the United States; and

(7) effectuated the abandonment of that appeal.

In light of those circumstances, the Supreme Court concluded that "although not a party, the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel." —— U.S. at ——, 99 S.Ct. at 975.

In *Southwest Airlines Co. v. Texas International Airlines Inc.,* 546 F.2d 84 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), the Fifth Circuit held that due process would not be violated by binding Civil Aeronautics Board carriers to a prior judgment, even though they were not parties to the action; since their interests were sufficiently represented by the *public* authorities that promulgated the ordinance and had the primary responsibility of enforcing it. In a footnote, the Court of Appeals noted an important factual distinction from the present action. In distinguishing the earlier case of *E. B. Elliot Advertising Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir.), *cert. denied,* 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970), the Court stated:

"In *Elliot* a private plaintiff challenged the constitutionality of a city ordinance after another *private litigant* had lost a similar challenge. The question was whether in the first suit the private litigant had represented the interests of the later challenger . . .

Representation by a government authority never came up because both of the private parties *opposed* the city. As a result, the case has no bearing on the *Southwest* litigation . . . .." 546 F.2d at 99, n.54.

Nor does *Cauefield v. Fidelity and Casualty Co. of New York,* 378 F.2d 876 (5th Cir. 1967) have any bearing on this case. *Cauefield* involved the use of the doctrine of "judicial estoppel" from Louisiana law. That case involved plaintiffs who actively participated in the first trial, represented by the same counsel, with evidence and testimony admittedly identical with the state court proceeding. The Court of Appeals concluded that due to the "unusual facts" of that case "absolutely nothing would be gained were appellants permitted to pursue their action . . ." 378 F.2d at 879.

The present case differs drastically from the cases cited by the defendant. There has been no showing of any degree of "control" approaching that exhibited in *Montana.* Few, if any, of the "unusual facts" present in *Cauefield* are present here. Nor do we have a case similar to *Southwest Airlines Co.,* where a public authority that promulgated an ordinance and who had the primary responsibility of enforcing it was a party in the first action. Here, as in *Elliot,* we have private litigants in both cases.

■■ The Court rejects Nissan Motors' argument that a likeness in complaint, closely coordinated pretrial responsibilities and joint motions and strategies are sufficient to enforce collateral estoppel against parties not represented in an action.[5] This

5. The Court notes that some of the identical factors were present in the *Southwest Airlines Co.* case. The court found that the CAB carriers had closely followed the *Southwest* litigation and were present at various hearings. It also noted that the airlines submitted amicus briefs, that there was no deficiency in counsel's performance, and that "relitigation would constitute a blatant disregard for the decision of this Court and for the judgment of the federal

Court has already held that P.D.Q. did not adequately represent the other class plaintiffs. The mere fact the cases were transferred under § 1407 does not have the effect of merging "the suits into a single cause, or change the rights of the parties, or make those who are parties to one suit parties in another." *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 176 (C.D.Cal.1976), quoting *Johnson v. Manhattan Railway*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). The relevance of that statement to this cause is apparent from the procedural history outlined above. This Court has consistently found these cases inappropriate for consolidation with the *P.D.Q.* action. By adopting a contrary position at this late date, it cannot be fairly said "that the procedure adopted fairly ensures the protection of the interests of absent parties who are to be bound by it." *Hansberry v. Lee*, 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940). Nor is it relevant that joint statements were filed by counsel that evinced a common strategy or purpose. It is in the interest of judicial economy that the Court ordered joint submissions, a procedure it follows in other multidistrict cases and which is specifically sanctioned by *The Manual for Complex Litigation*. *See, e. g.*, §§ 1.93 and 4.53. In § 1.93 at page 86 it is stated that "counsel should be urged to meet and voluntarily provide for joint presentation of common contentions of law and fact and to eliminate repetitive or unnecessary objections, motions, briefs, arguments, depositions and written interrogatories." Plaintiffs also convincingly point out in their memorandum that much of this pretrial material was not introduced by P.D.Q. counsel, and that their strategy at trial would be different than that of P.D.Q.'s counsel. In light of these many factors, this Court cannot confidently state that ab-

solutely nothing further could be gained if the plaintiffs are permitted to pursue their separate actions.

A case almost directly on point is *Humphreys v. Tann*, 487 F.2d 666 (6th Cir. 1973), *cert. denied*, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974). *Humphreys* involved an airline crash between Transworld Airlines and an aircraft owned by Tann. Several wrongful death actions were filed against both. The Panel transferred a number of the cases to the Southern District of Ohio for consolidated pretrial proceedings. The transferee court indicated it would try only one case and remand the others. The trial resulted in acquittal for Tann and liability for Transworld.

Tann then filed a motion for summary judgment before the District Court which was granted, the Sixth Circuit reversed citing *Blonder Tongue*. The Court made the following statement of direct relevance to this case:

> "We share the concern of the district court for the crowded dockets of federal courts and proper utilization of judicial time. However, we do not believe that these considerations can overcome the due process objection which was raised by the appellant as his first response to appellee's motion for summary judgment and which he has relied upon continuously." 487 F.2d at 671.

Nissan Motors attempts to distinguish *Humphreys* on factual grounds. It notes that different legal theories were being pursued, that the non-party plaintiff was not a participant in a critical pretrial conference, that different issues were presented to the jury as would have been in the subsequent cases, and that none of the parties expected to be bound by the testimony in the first case. Although many of these factors alleged by Nissan as present in this

district court in Southwest I. It would damage the public's interest in the most efficient allocation of resources in both the state and federal systems of justice." 546 F.2d at 102.

The Court in *Southwest* found none of these factors in and of itself was determinative.

Rather, it looked at any number of factors "that could tip the scales toward finding a violation of due process" before concluding that no violation existed. The Court in the present case finds the scales balanced differently.

case are disputed by the plaintiffs,[6] such an analysis misses the mark.

"Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which this one in question belongs." *Chicago, Burlington & Quincy Railroad Co. v. Chicago,* 166 U.S. 226, 240, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1896), quoting Cooley's Const.Lim. 356–357.

*See also Hansberry v. Lee,* 311 U.S. 32, 40–44, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

■ The rationale of *Humphreys* is not limited solely to the facts of that case. The test in the Fifth Circuit for a violation of due process is still a "weighing test" that balances the factors in any one case. *See Southwest Airline Co., supra,* at 101–2. As *Humphreys* and the cases previously reviewed indicate, the balance is struck for the application of collateral estoppel against one not present in the previous action only under the most extraordinary circumstances. The history and circumstances of this case do not allow the conception of "privity" to be stretched far enough to allow its application in light of the restrictions of due process.

### III.

The Court declines to accept defendant's argument that the Supreme Court's ruling in *Continental T. V. Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), requires the entry to summary judgment for Nissan Motors. The fact that P.D.Q. failed to establish the necessary evidence to escape judgment in an earlier case has no bearing on the present action.

■ The Court also rejects Nissan's assertion that *Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir. 1978) holds that there

must be proof that a conspiracy impacted upon each and every plaintiff and member of the state classes, and that its absence mandates summary judgment in their favor. While certifying a class in *Blue Bird Body Co.,* the Fifth Circuit in discussing *Shumate & Co., Inc. v. National Ass'n of Sec. Deal, Inc.,* 509 F.2d 147 (5th Cir. 1975) stated:

"The holding is also a recognition that 'impact' is a question unique to each particular plaintiff and one that must be proved with certainty. That does not mean of course that cases do not exist wherein this requirement cannot be established by some sort of classwide proof. But it does not mean that cases do exist wherein generalized proof of the impact would be improper."

The court stated that it wished to "emphasize" the importance of this consideration in class certification. 573 F.2d at 328.

This Court had previously rejected the defendant's argument that the establishment of damage "will require inquiry into each retail sale in each section of the country, in each of the time frames involved," in order to ascertain what the price of the automobile would be in the absence of the conspiracy. 61 F.R.D. at 375. Implicit in that ruling is a rejection of the need for an individualized impact analysis for each plaintiff. Nothing in *Blue Bird* affects the validity of that earlier decision.

---

6. The plaintiffs argue that at no time did they agree this would be a "test case." They also assert that P.D.Q. did not introduce at the trial much of the evidence and testimony that they will.